STARLING YOUNG, JR., Plaintiff-Appellee, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellant.

First District (1st Division)   No. 1—89—1929

Opinion filed December 17, 1990.—Rehearing denied March 13, 1991.—
Modified opinion filed March 25, 1991.

Flynn, Murphy & Ryan, of Chicago (Richard T. Ryan and Mark F. Smolens, of counsel), for appellant.

French, Kezelis & Kominiarek, of Chicago (Richard G. French, James M. Hofert, Russell P. Veldenz, and Patrick B. Cage, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

After a jury found the Chicago Transit Authority (CTA) liable for the injuries Starling Young (Young) sustained while a passenger on a CTA bus, the trial court entered judgment on the verdict. The CTA appeals the denial of its motion to dismiss, which was based upon an alleged affirmative defense of immunity, and in addition, claims prejudicial errors.

During the evening of December 4, 1977, Young, his brother Sheldon Young, and Reginald Granderson boarded a westbound Chicago Avenue CTA bus at Chicago Avenue and State Street in Chicago, Illinois. As the men entered the bus, two unidentified women also boarded. The two unidentified women were described as "an older woman" and "a younger woman." Later, while the men and women were on the bus, one of the unidentified women shot Young in the neck. Thereafter, on November 30, 1978, Young filed his lawsuit against the CTA for negligence.

Almost eight years after Young was shot, the Illinois legislature amended section 27 of the Metropolitan Transit Authority Act, and the amendment expressly states that September 24, 1985, was its "effective date." Amended section 27 provides, in pertinent part:

"Neither the [Chicago Transit] Authority, the members of its Board nor its officers or employees shall be held liable for failure to provide a security or police force or, if a security or police

force is provided, for \*\*\* failure to prevent the commission of crimes by fellow passengers or other third persons or for the failure to apprehend criminals." (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 327.)

Pursuant to amended section 27, the CTA filed a motion to dismiss Young's cause of action based upon its alleged immunity. On November 1, 1988, the trial court denied the CTA's motion to dismiss.

Also before trial, the trial court granted Young's motion *in limine* to preclude evidence that Young allegedly "consumed alcohol and/or was ejected from a McDonald's restaurant." Later at trial, the court again refused evidence of the "McDonald's incident" on the grounds that it was "very remote in terms of its probative weight \*\*\* and can [*sic*] be very prejudicial."

On February 27, 1989, the trial commenced. At trial, evidence was elicited that the three men and the two unidentified women sat at the back of the bus; that a conversation ensued between Young and the younger woman; that the conversation angered the older woman; and that the older woman told the younger woman, or Young, or both, not to talk.

At trial, Young testified that the older woman loudly threatened to "blow him away" if he did not discontinue the conversation; that the threats continued for a period of time; that subsequently the older woman placed her right arm around the younger woman's neck; that the older woman was holding a pistol; that after approximately 20 minutes, he (Young) left his seat, walked towards the bus driver, and the older woman followed; that Sheldon Young and the younger woman were arguing; that as Sheldon Young and the younger woman continued to fight, the older woman pointed her gun at Sheldon Young; and that when Young turned his back to warn Sheldon Young, the older woman shot Young in the neck. Young is now a paraplegic with partially paralyzed arms.

During the cross-examination of Young, the CTA attempted to introduce evidence that he was allegedly convicted for solicitation of prostitution in 1979. The trial court, however, ruled that questions regarding the alleged 1979 conviction were not admissible on the grounds that they were highly prejudicial and had minimal probative weight.

During Young's case in chief, Timothy V. O'Mahoney testified as an expert in transit security. O'Mahoney testified that he had previously worked as a security officer for the CTA; that the Chicago Avenue bus traveled through a "high crime" area; that the training CTA drivers were given regarding security matters was inadequate; that the bus driver should have used the bus' telephone to call the police when he

heard loud talking and lewd language; and that the bus driver should have called the police even if the talking ceased upon his request.

The bus driver testified that he heard obscene and vulgar language from the three men three times; that after each incident of vulgarity, he told the men to quiet down and they did so; that after the third "vulgar" language incident one of the women approached the front of the bus, that Young followed and asked the woman to get off the bus and have sex with him; that the woman asked Young to "please leave us alone"; and that when he heard a "bang," he curbed the bus, opened the doors and pressed the silent alarm.

After deliberating, the jury awarded Young $3,368,000, which was reduced by 25% for Young's negligence, leaving a total of $2,526,000. The trial court entered judgment upon the verdict and denied the CTA's post-trial motion. The CTA appeals both the denial of its motion to dismiss, which was based upon an alleged affirmative defense of immunity, and claimed prejudicial errors. For the reasons set forth below, we affirm the judgment of the trial court.

■ The CTA argues that the trial court erred in denying its motion to dismiss, which was based upon its alleged immunity pursuant to amended section 27, contending that amended section 27 should be applied retroactively. We disagree. Statutory changes are presumed to be prospective. However, the presumption of prospectivity can be rebutted by: (1) the amendment's express language; (2) "necessary implication"; (3) demonstrating that the amendment merely affects the remedy; or (4) demonstrating that the amendment merely affects procedural matters. *Rivard v. Chicago Fire Fighters Union, Local No. 2* (1988), 122 Ill. 2d 303, 309-10, 522 N.E.2d 1195, *cert. denied* (1988), 488 U.S. 909, 102 L. Ed. 2d 250, 109 S. Ct. 262.

■ Initially, the CTA argues that the presumption of prospectivity is rebutted by the amendment's express language or alternatively by "necessary implication" because the legislation clearly states that the CTA should not be liable for the criminal acts of third parties. We disagree. Amended section 27 expressly states that it was effective September 24, 1985. If the legislature intended the amendment to be retroactive, it could have expressly so stated, or made the amendment effective prior to September 24, 1985. Additionally, we do not find that retroactive application by necessary implication is appropriate. Necessary implication refers to a logical necessity, meaning that no other interpretation is permitted by the words of the statute construed. *In re Application of County Treasurer of Cook County for Sale of Certain Real Estate for Delinquent Taxes* (1973), 14 Ill. App. 3d 1062, 1066, 304 N.E.2d 9.

Further, the CTA argues that the presumption of prospectivity is rebutted by contending that amended section 27 merely affects Young's remedy, because Young's cause of action was not a vested right. In support thereof, the CTA cites *Shelton v. City of Chicago* (1969), 42 Ill. 2d 468, 248 N.E.2d 121, *cert. denied* (1969), 396 U.S. 906, 24 L. Ed. 2d 182, 90 S. Ct. 222, wherein the court held that 200 causes of action based upon mob violence statutes were barred, even though they were pending at the time the mob violence statutes were repealed, because "the legislature has the power to withdraw jurisdiction of the courts over *statutory* causes of action and the exercise of that power leaves all such causes of action *** where the repeal finds them." (Emphasis added.) (*Shelton*, 42 Ill. 2d at 473-74.) By analogy, the CTA argues that prior to amended section 27, the right to sue the CTA, a municipal corporation, was a special statutory cause of action created by an express waiver of sovereign immunity. Consequently, the CTA contends that the legislature could repeal its waiver of sovereign immunity without infringing upon any vested rights and that, therefore, the repeal of the statutory cause of action can retroactively bar Young's cause of action. We are not persuaded by the CTA's argument because, in contrast to *Shelton*, Young's cause of action was not premised upon a special statutory provision that waived sovereign immunity, but rather on the fact that immunity itself had been abolished (except where provided by law) by the Illinois State Constitution of 1970, article XIII, section 4.[1] Because of the abolition of sovereign immunity, Young's cause of action was not pursuant to a "special statutory" remedy, but rather based upon a common law remedy.

In response, the CTA cites *George v. Chicago Transit Authority* (1978), 58 Ill. App. 3d 692, 374 N.E.2d 679, as support for the proposition that "the eradication of sovereign immunity had no effect whatsoever on the CTA" and that, therefore, the right to sue the CTA is a "special statutory" cause of action. In *George*, the appellant argued that the elimination of tort immunity for governmental entities abolished immunity from punitive damages as well as for compensatory damages. The *George* court held that the CTA could not be liable for punitive damages in the absence of a statute specifically authorizing such recovery (58 Ill. App. 3d at 693) and, additionally, concluded "that the CTA is protected by common-law principles against punitive damages even

---

[1]Illinois State Constitution of 1970, article XIII, section 4, which became effective on January 1, 1972, states that "[e]xcept as the General Assembly may provide by law, sovereign immunity in this State is abolished."

without a statute which explicitly provides for such an exemption." (58 Ill. App. 3d at 695.) However, the *George* court stated:

> "[T]otal immunity from liability for any damages inflicted in the performance of a governmental function is not the issue in this case; by its enabling legislation, the CTA always has been required to respond in compensatory damages for its negligent conduct. (Ill. Rev. Stat. 1975, ch. 111⅔, par. 341.)" 58 Ill. App. 3d at 694.

■■ ■ Based upon the quoted passage, the CTA argues that the right to sue the CTA is a "special statutory" cause of action. Its argument is without merit. After the abolition of sovereign immunity, the right to sue the CTA was no longer predicated upon the original enabling legislation, but rather became a common law right. At the CTA's inception, the legislature had to codify the right to sue the CTA because the CTA was a municipal corporation (Ill. Rev. Stat. 1987, ch. 111⅔, par. 303) and, as such, would have not been liable for its negligence under the doctrine of sovereign immunity. However, when sovereign immunity was abolished, the legislature no longer had to create or maintain a "special statutory" right to sue the CTA. Upon the abolition of sovereign immunity, except here otherwise provided, the CTA became liable for compensatory damages to the same extent as any other common carrier. Nevertheless, section 41 of the Metropolitan Transit Act (Ill. Rev. Stat. 1987, ch. 111⅔, par. 341), which the *George* court referred to above, is still in effect because it relates to procedural matters rather than substantive rights. Section 41 provides a statute of limitations and provides how to give the CTA timely notice.[2]

■ Accordingly, when Young was injured in 1977, the CTA, as a common carrier, was bound to exercise a high degree of care toward its

---

[2]Section 41 provides: "No civil action shall be commenced in any court against the Authority by any person for any injury to his person unless it is commenced within one year from the date that the injury was received or the cause of action accrued. Within six (6) months from the date that such an injury was received or the cause of action accrued, any person who is about to commence any civil action in any court against the Authority for damages on account of any injury to his person shall file in the office of the secretary of the Board and also in the office of the General Attorney for the Authority either by himself, his agent, or attorney, giving the name of the person to whom the cause of action has occurred, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred and the name and address of the attending physician, if any. If the notice provided for by this section is not filed as provided, any such civil action commenced against the Authority shall be dismissed and the person to whom any such cause of action accrued for any personal injury shall be forever barred from further suing." Ill. Rev. Stat. 1987, ch. 111⅔, par. 341.

passengers and was responsible for preventing injuries which could have been reasonably foreseen and avoided. In particular, the CTA was liable for an assault or other misconduct by one passenger which injures another where it has reason to anticipate the misconduct but fails to exercise the degree of care and vigilance practicable under the circumstances to prevent the injury. *Gordon v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 493, 498, 470 N.E.2d 1163; *Letsos v. Chicago Transit Authority* (1970), 47 Ill. 2d 437, 441, 265 N.E.2d 650.

■ Additionally, the CTA argues that applying amended section 27 retroactively merely affects Young's remedy by asserting that amended section 27 does not alter or eliminate all causes of action because the actor who committed the criminal act could be sued. The CTA bases this argument on *Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 531 N.E.2d 1 (wherein the constitutionality of amended section 27 was challenged), and *Ostergren v. Forest Preserve District* (1984), 104 Ill. 2d 128, 471 N.E.2d 191 (wherein the constitutionality of a statute that abolished the previously recognized tort liability of landowners for injuries to snowmobilers was challenged). Again, we are not persuaded by the CTA's argument that amended section 27 should be applied retroactively. While the *Bilyk* and *Ostergren* courts' rationale was sufficient to hold that the respective amendments were constitutional because a remedy was not denied, neither court determined whether an amendment can be applied retroactively to bar an accrued cause of action and whether an amendment that bars an accrued cause of action is characterized as procedural or substantive.

■ Further, the CTA relies upon *Rodriguez-Erdman v. Ravenswood Hospital Medical Center* (1987), 163 Ill. App. 3d 464, 516 N.E.2d 731, *appeal denied* (1987), 118 Ill. 2d 551, 520 N.E.2d 392, as authority for its position that Young's cause of action can be retroactively barred because the amendment merely affects his remedy. The *Rodriguez-Erdman* court retroactively applied a statutory provision which barred the appellant's cause of action that alleged retaliatory discharge, breach of an employment contract, intentional interference with prospective business advantage and intentional infliction of emotional distress. The *Rodriguez-Erdman* court only considered that constitutionally vested rights are protected from retroactive application of an amendment when it stated that the amendment "does not *** destroy all causes of action or take away a constitutionally protected, vested right." (*Rodriguez-Erdman*, 163 Ill. App. 3d at 471.) However, only causes of actions created purely by statutory enactment, not common law rights, may be abrogated by retroactive application of an amendment. (*Cruz v. Puerto Rican Society* (1987), 154

Ill. App. 3d 72, 76, 506 N.E.2d 667; *In re Support of Josic* (1979), 78 Ill. App. 3d 347, 350, 397 N.E.2d 204.) Consequently, Young's cause of action cannot be retroactively barred because, after sovereign immunity was abolished, Young had a common law right to sue the CTA for its negligence.

██ ■ Next, the CTA argues that the presumption of prospectivity is rebutted because amended section 27 is characterized as a procedural amendment. We disagree. While there is neither a clear line nor a simple formula for determining whether changes in the law are substantive or procedural (*Rivard v. Chicago Fire Fighters Union, Local No. 2* (1988), 122 Ill. 2d 303, 310, 522 N.E.2d 1195, *cert. denied* (1988), 488 U.S. 909, 102 L. Ed. 2d 250, 109 S. Ct. 262), procedural law has been defined as "[t]hat which prescribes the method of enforcing rights or obtaining redress for their invasion; machinery for carrying on a suit." (*People v. Ruiz* (1985), 107 Ill. 2d 19, 22, 479 N.E.2d 922.) Examples of amendments that have been characterized as procedural and applied retroactively include changes to statutes of limitation where the party affected has had a reasonable time to bring an action after enactment of the changes (*Board of Education of School District No. 170 v. Illinois State Board of Education* (1984), 122 Ill. App. 3d 471, 474, 461 N.E.2d 567); and service of process changes (*Ogdon v. Gianakos* (1953), 415 Ill. 591, 596, 114 N.E.2d 686). The *Ogdon* court stated that the service of process statute was " 'certainly not part of the law which creates, defines, or regulates rights *** [and] is not what *makes one a party to a suit*.' " (Emphasis added.) (*Rivard*, 122 Ill. 2d at 311, quoting *Ogdon*, 415 Ill. at 596.) An example of an amendment which was characterized as substantive and applied prospectively involved a statutory amendment that allowed unincorporated associations to be parties to lawsuits. (*Rivard*, 122 Ill. 2d at 311.) The *Rivard* court held that the amendment was presumptively prospective because "a rule which 'makes one a party to a suit' must be considered substantive, whereas a rule which merely facilitates suit against a party is procedural." (*Rivard*, 122 Ill. 2d at 311.) Accordingly, we reject the CTA's argument that amended section 27 is procedural. Furthermore, we are unpersuaded by the CTA's reliance on *State Farm Mutual Automobile Insurance Co. v. Palmer* (1984), 123 Ill. App. 3d 674, 463 N.E.2d 129, wherein interspousal immunity was considered a procedural bar because it could be waived, rather than a substantive bar to actions between spouses. We reject the applicability of *Palmer* because the statutory immunity granted under amended section 27, in contrast to interspousal immunity, is non-waivable and prevents a cause of action from coming into being.

Therefore, under the *Rivard* principle, amended section 27 is characterized as substantive because it determines who may be a party to a suit. *Rivard*, 122 Ill. 2d at 311.

Therefore, we find that the presumption that amended section 27 is prospective has not been overcome, and conclude that the 1985 amendment to section 27 is a substantive change in the law.

■■ Turning to the CTA's claimed prejudicial errors, the CTA argues that the trial court's ruling that barred evidence regarding the McDonald's incident was probative of Young's conduct on the bus and unduly restricted the CTA from proving that the bus driver was not negligent, that the CTA was not the proximate cause of Young's injury, and that Young's conduct was the proximate cause of his injury. We disagree. The trial court acted within the scope of its discretion when it did not allow evidence of the McDonald's incident because: (1) the record reflects that the two unidentified women involved in the shooting were not involved in the McDonald's incident; (2) the McDonald's incident was not admissible as relevant testimony about Young's character or reputation (*Hickey v. Chicago Transit Authority* (1964), 52 Ill. App. 2d 132, 139, 201 N.E.2d 742); and (3) the McDonald's incident was not probative regarding the CTA's negligence or the extent of Young's damages. Moreover, the CTA presented the following evidence that Young's conduct was the proximate cause of his injury: that Young initiated the conversation with one of the unidentified women; that the conversation upset the other unidentified woman; that when one of the unidentified women walked near the bus driver, Young followed her; and that when Young continued talking with the unidentified woman, she shot him in the neck. Accordingly, the CTA was not barred from proving its theory of liability, but was merely limited to presenting evidence regarding Young's conduct on the bus. The trial court properly excluded evidence of the McDonald's incident.

■■ ■ The CTA also argues that the trial court erred in not allowing the CTA to cross-examine Young regarding an alleged conviction on November 26, 1979, for solicitation of prostitution, contending that the probative value of evidence relating to Young's background outweighed any undue prejudice. We disagree. The rule regarding such impeachment was set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510, 516, 268 N.E.2d 695. The *Montgomery* court held that a prior conviction may only be admitted if it is punishable by imprisonment of one year or more, or if it involves dishonesty. (*Montgomery*, 47 Ill. 2d at 516-19.) This rule also applies in civil cases. (*Ashby v. Price* (1983), 112 Ill. App. 3d 114, 120, 445 N.E.2d 438, citing

*Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 363 N.E.2d 805.) Therefore, the court did not abuse its discretion in determining that the prejudice outweighed the probative value, because solicitation of prostitution is a Class A misdemeanor, which carries a sentence of less than one year (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—3).

    ■ Additionally, the CTA argues that the trial court erred in allowing O'Mahoney's testimony that the bus Young was injured on travelled through a "high crime" area, contending that the fact that a particular bus route travels through a neighborhood with a crime problem has nothing to do with whether Young's injury was reasonably foreseeable. This issue was not raised and it has therefore been waived. (107 Ill. 2d R. 366(b)(2)(iii); *Raabe v. Maushak* (1977), 55 Ill. App. 3d 169, 172, 371 N.E.2d 96.) We are not persuaded by the CTA's contention that the issue was preserved for appeal by Young's reply to the CTA's post-trial motion, which discussed the propriety of O'Mahoney's testimony, because Young's pleading was unresponsive and extraneous to the issues raised in the CTA's post-trial motion.

    ■ We also reject the CTA's argument that the trial court erred in refusing to submit the following special interrogatories to the jury: "the sole proximate cause of the injuries was the assault committed by Young on an unidentified passenger"; and "the proximate cause of the injuries was the assault committed by Young concurring with the assault committed by the unidentified passenger." Giving special interrogatories to the jury is within the trial court's discretion. (*Henderson v. Illinois Central Gulf R.R. Co.* (1983), 114 Ill. App. 3d 754, 760, 449 N.E.2d 942.) We find that the trial court acted within its discretion by refusing the CTA's special interrogatories regarding proximate cause because the repeated reference that Young committed an assault was argumentative and could confuse or mislead the jury. *Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 362, 484 N.E.2d 542.

    ■ Finally, the CTA argues that the court erred in refusing to instruct the jury regarding whether the unidentified woman was justified in the use of force in response to an alleged assault committed by Young. We disagree. The trial court acted within the scope of its discretion in determining that such an instruction was not warranted because there was insufficient evidence to support the CTA's theory. Specifically, there was not any evidence that Young physically assaulted either of the unidentified women and neither of the unidentified women testified to any physical threats that Young allegedly committed.

In conclusion, the CTA was not prejudiced by any of the claimed errors whether they are considered alone or in combination.

For the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.