578 N.E.2d 1139 (1991)
218 Ill. App.3d 866
161 Ill.Dec. 493
Richard ORES and Harriet Sproull, co-executors of the Estate of Ronald E. Sproull, deceased, and Harriet Sproull, individually, Plaintiffs,
v.
Philip KENNEDY and Vedder, Price, Kaufman & Kammholz, a partnership including professional corporations, Defendants, Third Party Plaintiffs-Appellants (Alvin J. Golden, Third Party Defendant-Appellee).
No. 1-89-2598.
Appellate Court of Illinois, First District, First Division.
August 26, 1991.
*1141 Phelan, Pope & John, Ltd., Chicago (Donald B. Hilliker, Stanley V. Figura, of counsel), for plaintiffs-appellants.
Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago (George W. Spellmire, Jr., Nancy G. Lischer, Caroline A. Mondschean, of counsel), for appellee Alvin J. Golden.
Justice O'CONNOR delivered the opinion of the court:
Plaintiffs, Richard Ores and Harriet Sproull acting as executors of Ronald Sproull's estate, sued Philip Kennedy and the law firm of Vedder, Price, Kaufman & Kammholz (Vedder Price) for alleged legal malpractice. Subsequently, Kennedy and Vedder Price, Illinois attorneys, acting as third party plaintiffs sought contribution and filed a third party complaint against Alvin Golden, a Texas attorney. The trial court dismissed the third party plaintiffs' complaint against Golden for lack of personal jurisdiction. The third party plaintiffs appeal the dismissal.
Third party plaintiff Kennedy is a member of the third party plaintiff law firm Vedder Price. The third party plaintiffs prepared decedent Ronald Sproull's will and trust agreement when the decedent was an Illinois resident. After the decedent's will was executed, he moved to Texas. Subsequently, on October 19, 1982, Ronald Sproull died in a plane crash. Harriet Sproull, the decedent's widow and a Texas resident, was named as an executor. Additionally, Ores, an Illinois resident, was named as an executor. Ores acted as the family's accountant and financial advisor. Between December 1982 and November 1983, the executors sold approximately 625,000 shares of Tellab stock which was worth over $18,000,000.
After selling the Tellabs stock, the executors filed a legal malpractice complaint against the third party plaintiffs alleging that the third party plaintiffs negligently drafted decedent Ronald Sproull's will and trust agreement which allegedly caused Ronald Sproull's estate to incur approximately $1,500,000 excess tax liability.
Subsequently, the third party plaintiffs filed a third party complaint against Golden for contribution. The third party plaintiffs alleged that Golden negligently advised the executors to sell the Tellabs stock. Specifically, the third party plaintiffs contended *1142 that Golden failed to read and consider the will and trust agreements, that Golden failed to structure the stock sale to minimize the estate's tax liability and that the estate would not have incurred the alleged excess tax liability if the Tellabs stock was not sold.
Pursuant to the Illinois long-arm statute (Ill.Rev.Stat.1987, ch. 110, par. 2-209), Golden was purportedly served in Texas. Subsequently, Golden filed a motion to quash and dismiss the service of summons alleging that the Illinois trial court lacked personal jurisdiction. Golden's affidavit was included with his motion to quash and dismiss.
Golden's affidavit stated the following: He is a citizen and resident of Texas. While he is licensed to practice law in Texas, he is not licensed in Illinois. On or about November 4, 1982, Golden was contacted by Charles Wiggins, a Vedder Price attorney. Wiggins informed him that Harriet Sproull and Ores had been named co-executors of Ronald Sproull's estate, that "Ronald and Harriet Sproull were Texas residents, with property in Texas, and that as a result, it was necessary to retain Texas counsel to have the estate admitted to probate in Texas." Between November 4 and November 11, 1982, Harriet Sproull contacted Golden to discuss the estate. After Golden spoke with Harriet Sproull and before November 15, 1982, Ores called Golden. On or about November 15, 1982, the executors retained Golden for the purpose of admitting the decedent's will and trust agreement to probate in Texas. Golden admitted that between November 9, 1982 and January 1984, he corresponded and had telephone conversations with Ores, with attorneys at Vedder Price and with the trust department at the First National Bank of Chicago. He never met with Ores or Harriet Sproull in Illinois. All of his activity on behalf of the estate occurred in Texas. He never traveled to Illinois for any reason connected with his representation of the estate.
In response to Golden's motion to quash and dismiss the service of summons, the third party plaintiffs introduced Golden's billing records as evidence of Golden's contacts with Illinois. The third party plaintiffs introduced the following evidence. Golden participated in conference calls with Ores on December 3, 6, 15 and 23 of 1982 concerning the estate's sale of Tellabs stock. Golden also participated in telephone conferences with Ores on January 12, 14, 19, 20, March 10 and May 4 of 1983 concerning the estate's sale of Tellabs stock. In a June 2, 1983, letter and a June 14, 1983, conference call, Golden sought advice from third party plaintiff Kennedy and Wiggins, Vedder Price attorneys, regarding the estate's tax liability as a consequence of the stock sale. Golden also had similar telephone calls with Wiggins on June 29, and July 18, 1982.
Additionally, the third party plaintiffs introduced the following: On July 27, August 8 and September of 1983, Golden participated in telephone conversations with Ores regarding investments and the Tellabs stock. On July 25 and 26, 1983, Golden sent a letter by Federal Express to the Continental Bank in Chicago regarding letters necessary to complete a stock transfer. Furthermore, there were other telephone conversations and correspondences between Golden and Ores.
On August 25, 1989, after hearing Golden's motion to quash and dismiss the service of summons and the evidence introduced by the third party plaintiffs, the trial court granted Golden's motion to quash and dismiss on the grounds that Golden's activities were insufficient to confer jurisdiction on Illinois courts, relying on the Illinois long-arm statute (Ill.Rev.Stat.1987, ch. 110, par. 2-209.) The long-arm statute provided, in relevant part, the following:
"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:
(1) The transaction of any business within this State;

*1143 (2) The commission of a tortious act within this State." (Ill.Rev.Stat.1987, ch. 110, par. 2-209.)
In 1989, an amendment to the long-arm statute became effective. (Ill.Rev.Stat. 1989, ch. 110, par. 2-209 amended by Pub. Act 86-840.) The amended long-arm statute specifically provides that Illinois courts "may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." Ill.Rev.Stat.1989, ch. 110, par. 2-209(c).
The third party plaintiffs appeal the dismissal of their complaint, asserting that the Illinois courts can assert personal jurisdiction over Golden pursuant to the amended long-arm statute. In particular, the third party plaintiffs argue that the amended long-arm statute should be applied retroactively to validate the service upon Golden and, thus, contend that Illinois courts have personal jurisdiction over Golden. We agree. Additionally, we are not persuaded that Golden must be served again because the original service gave him notice of the complaint and allowed him sufficient opportunity to prepare his defense.
The third party plaintiffs correctly argue that the amended long-arm statute applies retroactively, contending that the presumption of prospectivity is rebutted because "the Illinois long-arm statute merely specifies a procedure for enforcing existing rights." While the general rule is that statutory changes are presumed to be prospective, the presumption of prospectivity can be rebutted by demonstrating that the amendment merely affects procedural matters. (Young v. Chicago Transit Authority (1990), 209 Ill.App.3d 84, 89, 154 Ill.Dec. 18, 568 N.E.2d 18, appeal denied (1991), 139 Ill.2d 606, 159 Ill.Dec. 118, 575 N.E.2d 925, citing Rivard v. Chicago Fire Fighters Union, Local No. 2 (1988), 122 Ill.2d 303, 309-310, 119 Ill.Dec. 336, 522 N.E.2d 1195, cert. denied (1988), 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250.) A procedural change in law generally prescribes methods of enforcing rights and embraces pleading, evidence and practice, i.e., legal rules which direct the means to bring parties into court or the manner in which the court process shall proceed. It facilitates suit against a party. (See Young v. Chicago Transit Authority (1990), 209 Ill.App.3d 84, 93, 154 Ill.Dec. 18, 568 N.E.2d 18.) In contrast, a substantive change in law establishes, creates, defines or regulates rights, and thus could actually "make one a party to a suit." (Rivard, 122 Ill.2d at 310-11, 119 Ill.Dec. 336, 522 N.E.2d 1195 quoting Ogdon v. Gianakos (1953), 415 Ill. 591, 114 N.E.2d 686.) In the case at bar, the amended long-arm statute was certainly not part of the law which creates, defines, or regulates rights and is not what makes one a party to a suit. See Ogdon, 415 Ill. at 596, 114 N.E.2d 686.
In support of their contention that the amendment is procedural, the third party plaintiffs correctly rely on Nelson v. Miller (1957), 11 Ill.2d 378, 143 N.E.2d 673 and Sunday v. Donovan (1958), 16 Ill.App.2d 116, 147 N.E.2d 401. In Miller, the court applied the original long-arm statute retroactively where the plaintiff's cause of action arose before the effective date of the statute's provisions and the nonresident defendant, who transacted business in Illinois, was served after the original statute's effective date. The Miller court determined that the long-arm statute affected the law of procedure and stated that "the statute merely establishes a new mode of obtaining jurisdiction of the * * * defendant in order to secure existing rights, which are unaffected by [the] amendment." (Miller, 11 Ill.2d at 383, 143 N.E.2d 673.) Similarly, in Sunday v. Donovan (1958), 16 Ill.App.2d 116, 120-21, 147 N.E.2d 401, the court stated that the long-arm statute "indicates a procedure by which legal rights may be enforced and should be distinguished from an amendment which creates a new right. It is, in effect, simply an addition to the legal machinery used to acquire jurisdiction over a defendant and does not add new legal rights to the body of substantive law." Sunday, 16 Ill. App.2d at 121, 147 N.E.2d 401.
The third party plaintiffs' cause of action against Golden exists independently of the new mode of obtaining jurisdiction. The *1144 amended statute merely provides a means of obtaining jurisdiction over a nonresident defendant to the full extent permitted by the due process clause of the United States Constitution. (Ill.Rev.Stat.1989, ch. 110, par. 2-209 amended by Pub.Act 86-840.) "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." World-Wide Volkswagen Corp. v. Woodson (1980), 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490.
When the legislature expanded the long-arm statute to the extent permitted by the due process clause of the Fourteenth Amendment, it effectively overruled Green v. Advance Ross Electronics Corp. (1981), 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203. In Green, the Illinois Supreme Court stated that "[a] statute worded in the way ours is should have a fixed meaning without regard to changing concepts of due process," and the court required a party's actions to fall within the ambit of the preamended long-arm statute (Green, 86 Ill.2d at 436, 56 Ill.Dec. 657, 427 N.E.2d 1203), e.g., that the nonresident transacted business within Illinois or committed a tortious act in Illinois.
Pursuant to the amended Illinois long-arm statute and before exercising in personam jurisdiction, due process requires that a nonresident defendant have certain minimum contacts with the forum State such that maintenance of the suit there does not offend "traditional notions of fair play and substantial justice." (International Shoe Co. v. State of Washington (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95.) Therefore, the following three criteria must be considered to determine whether the court's exercise of jurisdiction over Golden satisfies due process: (1) whether the nonresident defendant had "minimum contacts" with the forum state such that he had "fair warning" that he may be required to defend himself there; (2) whether the action arose out of or relates to the defendant's contacts with the forum; and (3) whether it is reasonable to require the defendant to litigate in the forum state. Burger King Corp. v. Rudzewicz (1985), 471 U.S. 462, 472-77, 105 S.Ct. 2174, 2181-85, 85 L.Ed.2d 528.
The first criteria is satisfied. Golden had "minimum contacts" with Illinois such that he had "fair warning" that he may be required to defend himself here. The "fair warning" requirement is satisfied if Golden either "purposefully directed" his activities at Illinois residents; reached out beyond one state to create continuing relationships and obligations with citizens of another state; or purposefully derived benefit from his interstate activities. (Burger King Corp. v. Rudzewicz (1985), 471 U.S. 462, 472-73, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528.) We find that Golden had fair warning that he may be required to defend himself in Illinois because he "purposefully directed" his activities at Illinois residents. Golden directly corresponded and conversed on the telephone with Ores and Illinois banks many times while performing his fiduciary duties to the estate and the estate's executors. See Vishay Intertechnology, Inc. v. Delta International Corp. (4th Cir.1982), 696 F.2d 1062, 1065-67 (due process was satisfied when nonresident on five occasions directed either telephone calls or letters to forum resident); Brown v. Flowers Industries, Inc. (5th Cir.1982), 688 F.2d 328, 332-33, cert. denied (1983), 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (jurisdiction was supported by a single telephone call initiated by nonresident defendant to forum resident); McGee v. Riekhof (D.Mont.1978), 442 F.Supp. 1276, 1279 (jurisdiction was found when plaintiff sued nonresident surgeon for malpractice when he misdiagnosed forum plaintiff's illness by telephone).
Golden, however, attempts to distinguish Vishay and Brown, contending that in those cases the defendants' intentional conduct was significant in determining whether the nonresident defendants purposefully availed themselves to the benefits and protections of the forum state's laws. Golden's contention is meritless for two reasons: (1) whether a non-resident defendant intentionally caused a wrong to a plaintiff in the forum is only one factor *1145 that may be considered in determining jurisdiction, other factors include whether a nonresident defendant had repeated business contacts with the forum (McGee v. Riekhof (D.Mont.1978), 442 F.Supp. 1276, 1277); and (2) the McGee court held that a nonresident doctor's alleged negligence in rendering medical service over a telephone was sufficient for the court to exercise personal jurisdiction in a medical malpractice case, rather than nonresident's intentional conduct. (McGee, 442 F.Supp. at 1279.) Golden had repeated business contacts with the third party plaintiffs in Illinois, which contacts gave rise to the alleged malpractice.
Additionally, we find that Golden had fair warning that he may be "hailed into court" in Illinois because of his conduct and connections with Illinois. Golden purposefully derived a financial benefit from his activities that were directed at Illinois residents, e.g., Golden billed the decedent's estate for his time spent on numerous calls and correspondences with Ores and Illinois banks.
After determining that Golden's conduct established "minimum contacts," we find that the third party plaintiffs' cause of action arose out of Golden's contacts with Illinois, the forum state. Based upon the record, it is clear that Golden represented Ores in his capacity as an executor and extensively communicated with Ores from November 1982 through August 1984. Significantly, the essence of the third party plaintiffs' complaint is the nature or quality of Golden's representation and communications to Ores during that time.
Finally, we must determine whether it is reasonable to require Golden to litigate the cause of action in Illinois. In determining whether it is reasonable, the following factors should be considered: "the forum State's interest in resolving the dispute; the plaintiff's interest in obtaining relief; and the interests of the several States, including the forum State, in the efficient judicial resolution of the dispute and the advancement of substantive social policies." (Wiles v. Morita Iron Works Co. (1988), 125 Ill.2d 144, 152, 125 Ill.Dec. 812, 530 N.E.2d 1382 citing Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County (1987), 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92.) Because Golden has purposefully directed his activities at Illinois residents, he must present a "compelling case" that jurisdiction is unreasonable. Burger King Corp. v. Rudzewicz (1985), 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528.
We find that it is reasonable to require Golden to litigate the cause of action in Illinois. Illinois has a substantial interest in resolving the third party plaintiffs' contribution action which arose from Ores', an Illinois resident, claim for damages. There is a public policy in Illinois which favors contribution (Skinner v. Redd Prentice Division Package Machinery Co. (1977), 70 Ill.2d 1, 15 Ill.Dec. 829, 374 N.E.2d 437, cert. denied (1978), 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787; Ill.Rev. Stat.1987, ch. 70, par. 302 (Contribution Among Joint Tortfeasors Act); Moon by Moon v. Thompson (1984), 127 Ill.App.3d 657, 658-59, 82 Ill.Dec. 831, 469 N.E.2d 365), and which favors litigating contribution actions in the same proceeding as the injured party's claim (Laue v. Leifheit (1984), 105 Ill.2d 191, 195-97, 85 Ill.Dec. 340, 473 N.E.2d 939). Additionally, the third party plaintiffs obviously have a substantial interest in obtaining relief in Illinois. They do not want to be liable for more than their pro rata share. While Texas certainly has an interest in the controversy since Golden is a Texas resident, judicial economy dictates that the action against the third party plaintiffs, which was filed in Illinois, and the third party plaintiffs' action against Golden should be consolidated into one action. The actions involve common facts, parties and witnesses who will already be in Illinois to litigate the suit against the third party plaintiffs. Consequently, we do not find that Golden presented a "compelling case" that jurisdiction is unreasonable and we do not believe that he would be unduly burdened by litigating the contribution action in Illinois.
*1146 The order of the circuit court of Cook County is reversed on the grounds that Illinois may assert in personam jurisdiction over Golden pursuant to the amended long-arm statute.
Reversed.
CAMPBELL and BUCKLEY, JJ., concur.