RICHARD J. SCHWEICKERT, Plaintiff-Appellant, v. AG SERVICES OF AMERICA, INC., *et al.*, Defendants-Appellees.—JOSEPH HELLAND *et al.*, Plaintiffs-Appellants, v. AG SERVICES OF AMERICA, INC., *et al.*, Defendants-Appellees.

Third District   Nos. 3—04—0339, 3—04—0418 cons.

Opinion filed January 31, 2005.

John V. Hanson (argued), of Hanson & Hanson, of Morris, for appellants.

Robert Lindstrom (argued), of Mustain, Lindstrom & Henson, of Galesburg, and Frederick E. Strufe, of Dwight, for appellees.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiffs Richard J. Schweickert and Joseph and Janet Helland brought a declaratory judgment action against defendant Ag Services of America, Inc., seeking a declaration that their statutory landlord's liens for crops grown on their property had priority over the perfected security interest claimed by Ag Services. Both parties filed motions for summary judgment. The trial court granted Ag Services' motion, finding that plaintiffs had failed to file a financing statement as required by the July 1, 2001, amendment to section 9—316 of the Code of Civil Procedure (Code) (735 ILCS 5/9—316 (West 2002)). We reverse and remand for further proceedings.

Schweickert and the Hellands own farmland in Grundy and La Salle Counties, respectively. Both landowners leased their property to William Myre, Sr., for the 2002 crop year. Under the terms of the leases, the cash rent for Schweickert's property was $9,680, and the cash rent for John and Janet Hellands' property was $10,000. At the growing season's conclusion, Myre failed to pay the rent to both landlords. Both Schweickert and the Hellands gave statutory written

notice to Myre's elevator, Cargill Grain, Inc., claiming rights to the crop proceeds based on their statutory landlord's liens under section 9—316 of the Code.

Ag Services is a financial lending institution that specializes in agricultural loans. In 2000, Myre executed a promissory note payable to Ag Services in the principal amount of $1,200,000. The note was secured by property described in an agricultural security agreement and included an interest in all crops growing or to be grown by Myre on property owned by the plaintiffs. Ag Services perfected its security interest by filing a financing statement with the Secretary of State. The promissory note matured on January 15, 2001. Myre failed to pay the balance and defaulted on the loan.

In both cases, Cargill issued checks to the plaintiff landlords for the grain grown on their property in 2002. The checks listed several payees, including the landlords, Ag Services and other interested parties. Ag Services refused to endorse the checks. It claimed a priority over plaintiffs' liens based on its security interest in the crop under section 9—322 of the Uniform Commercial Code (UCC) (810 ILCS 5/9—322 (West 2002)).

In the spring of 2003, Schweickert and the Hellands filed suit seeking a declaratory judgment. Both sides filed motions for summary judgment. The landlords claimed that their statutory liens had priority over Ag Services' security interest under section 9—316 of the Code. Ag Services argued that its security interest had priority over the landlords' liens because the landlords failed to perfect their liens by filing the required financing statements under the UCC. The trial court granted summary judgment in favor of Ag Services.

## ANALYSIS

Section 9—316 of the Code creates a landlord's lien on crops and proceeds which secures the payment of rent and the faithful performance of other lease terms. Prior to July 1, 2001, the statutory landlord's lien automatically had priority over all other liens, even those preexisting the landlord's lien. In July 2001, however, the legislature amended section 9—316. The amendment required a landlord to perfect his lien by filing a financing statement with the Secretary of State in order to establish priority over other agricultural liens or any security interest filed pursuant to Article 9 of the UCC. 735 ILCS 5/9—316 (West 2000) (amended July 1, 2001). A little over a year later, on August 21, 2002, the legislature again amended section 9—316, no longer requiring a landlord to file a financing statement to perfect his statutory lien. The 2002 amendment restored the original language of the statute as it was before the 2001 amendment. 735 ILCS 5/9—316 (West 2002).

Plaintiffs argue that the current version of section 9—316 applies retroactively. They contend that since the statute does not require landlords to file a financing statement, their liens are prior to Ag Services' security interest.

We review questions of statutory interpretation *de novo. Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 713 N.E.2d 543 (1999).

■ Illinois courts have developed a three-tiered test to determine retroactivity. First, has the legislature clearly indicated the temporal, or retroactive, reach of the amended statute? *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 37, 749 N.E.2d 964 (2001), citing *Landgraf v. USI Film Products*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). If not, is the amendment procedural or substantive in nature? *People v. Glisson*, 202 Ill. 2d 499, 782 N.E.2d 251 (2002) (construing section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2002))). Only those amendments that are procedural in nature may be applied retroactively. *Glisson*, 202 Ill. 2d 499, 782 N.E.2d 251. And finally, if the statute is procedural, does it have a "retroactive impact"? *Commonwealth Edison*, 196 Ill. 2d 27, 749 N.E.2d 964. Absent retroactive impact, the amended statute will apply. *Commonwealth Edison*, 196 Ill. 2d at 38.

I

The 2002 amendment is silent about its retroactive application. Thus, we must determine whether the changes to section 9—316 of the Code are procedural or substantive in nature.

■ It is often difficult to distinguish between statutes that are procedural and those that are substantive. Procedural law has been defined as " '[t]he mode of proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right.' " *Ogdon v. Gianakos*, 415 Ill. 591, 595, 114 N.E.2d 686 (1953). Generally, a procedural change in the law prescribes a method of enforcing rights or involves pleadings, evidence and practice. *Ores v. Kennedy*, 218 Ill. App. 3d 866, 578 N.E.2d 1139 (1991); see also *Rivard v. Chicago Fire Fighters Union Local No. 2*, 122 Ill. 2d 303, 522 N.E.2d 1195 (1988). Examples of amendments that have been characterized as procedural and applied retroactively include amendments to the long-arm statute and service of process changes. *Ores v. Kennedy*, 218 Ill. App. 3d 866, 578 N.E.2d 1139 (1991); *Ogdon*, 415 Ill. 591, 114 N.E.2d 686; see also *Orlicki v. McCarthy*, 4 Ill. 2d 342, 122 N.E.2d 513 (1954) (change to statute of limitations applied retroactively, amendment merely affected the remedy and not the right).

In *Ores*, the plaintiff sought retroactive application of a 1989

amendment to the long-arm statute. The appellate court stated that the statutory change merely established a new mode of obtaining jurisdiction over the defendant in order to secure existing rights, which were unaffected by the amendment. The court noted that the statute indicated a procedure by which legal rights may be enforced and should be distinguished from an amendment which creates a new right. The court concluded that the amendment was procedural in nature and applied it retroactively to the plaintiff's claim. *Ores*, 218 Ill. App. 3d 866, 578 N.E.2d 1139.

In *Ogdon*, defendant was served with process in conformity with the laws of Illinois in force at the time of service. At that time, the law permitted substituted service on the Secretary of State for a former resident who no longer lived in Illinois. However, when the cause of action arose, the statute did not allow substitute service. The court concluded that the statute in question was merely a step in obtaining jurisdiction of the person after the right or cause of action existed. Thus, it was part of the law of procedure, not substance, and applied retroactively. *Ogdon*, 415 Ill. 591, 114 N.E.2d 686.

In contrast, a substantive change in law establishes, creates, or defines rights. *Ogdon*, 415 Ill. 591, 114 N.E.2d 686. An example of an amendment which was characterized as substantive and applied prospectively involved a statutory amendment that allowed an income tax credit for subchapter S corporation shareholders that previously did not exist. *Caveney v. Bower*, 207 Ill. 2d 82, 797 N.E.2d 596 (2003).

■ In this case, the 2002 amendment to section 9—316 is not part of the law that creates or defines the right. Ag Services has a perfected security interest in the crops pursuant to section 9—322 of the UCC. Plaintiffs have landlord liens for the faithful performance of their cash rent lease created by the general provisions of section 9—316 of the Code. The 2002 amendment to section 9—316 did not alter those rights. The amendment merely altered the method by which a landlord could enforce that right. To have a superior priority, a landlord no longer needs to file a financing statement with the Secretary of State. The amendment changed the landlord's status as to the priority of his lien, but it did not change the lien. See *Nelson v. Miller*, 11 Ill. 2d 378, 143 N.E.2d 673 (1957) (procedural amendment to long-arm statute merely established a new mode of obtaining jurisdiction over defendant to secure existing rights, which were unaffected by amendment). Thus, we find that the 2002 amendment to section 9—316 is a procedural, not a substantive, change.

## II

■ A finding that the statutory change is procedural in nature,

however, does not end our inquiry. Even if a statutory amendment is procedural, it may not be applied retroactively if the statute would have a retroactive impact. An amended statute has a retroactive impact or effect if it (1) impairs rights that a party possessed when it acted, (2) increases a party's liability for past conduct, or (3) imposes new duties with respect to transactions already completed. *Commonwealth Edison*, 196 Ill. 2d 27, 749 N.E.2d 964; see also *Caveney*, 207 Ill. 2d at 97-105 (Freeman, J., specially concurring, joined by McMorrow and Kilbride, JJ.). A statute does not operate retrospectively merely because it upsets expectations based on prior law. Instead, we must consider whether the amendment attaches new legal consequences to events completed before the statute was changed. *Commonwealth Edison*, 196 Ill. 2d 27, 749 N.E.2d 964.

■ In this case, there is no indication that any party reasonably relied on the part of the statute which was omitted from the 2002 amendment or that the retroactive application of the statute will impair any vested right. Specifically, the amendment does not impair rights that Ag Services possessed when it acted, because, when the debtor defaulted, it did not act. The amendment does not increase Ag Services' liability for any past conduct. The amendment does not impose a new duty on transactions already completed because Ag Service did not even initiate collection proceedings prior to the 2002 amendment. Consequently, Ag Services had no vested rights, and the application of the amendment does not have a retroactive impact.

The amendment to section 9—316 is procedural and can be applied retroactively. Schweickert and the Hellands were not required to file a financing statement under the UCC to perfect their liens. Their statutory liens have priority over Ag Services' security interest. Thus, summary judgment in favor of Ag Services should be reversed.

## CONCLUSION

The judgment of the circuit court of Grundy County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

SLATER, P.J., and McDADE, J., concur.