DEICKE CENTER—MARKLUND CHILDREN'S HOME, Plaintiff-Appellee, v. ILLINOIS HEALTH FACILITIES PLANNING BOARD *et al.*, Defendants-Appellants.—BRIDGEMARK OF WEST FRANKFORT II, LLC, doing business as Parkview Care Center, Plaintiff-Appellee, v. ILLINOIS HEALTH FACILITIES PLANNING BOARD *et al.*, Defendants-Appellants.

First District (1st Division)    Nos. 1—08—0600, 1—08—1359 cons.

Opinion filed March 30, 2009.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellants.

Jason T. Lundy and Carina M. Segalini, both of Polsinelli Shalton Flanigan Suelthaus PC, of Chicago, for appellees.

JUSTICE HALL delivered the opinion of the court:

In these consolidated appeals, we address whether an amendment to the Illinois Health Facilities Planning Act (20 ILCS 3960/1 *et seq.* (West 2006)) (the Act) was procedural in nature and therefore applied retroactively. In both cases the circuit court so found. We agree and affirm the circuit court in each case.

The facts in both cases are largely undisputed. In appeal No. 1—08—0600, Deicke Center was owned by the plaintiff, Marklund Children's Home (Marklund), and was operated as a long-term care facility for persons under the age of 22 years. By August 31, 2006, Deicke Center was unoccupied and had ceased operations. On November 22, 2006, Marklund's president advised the defendant, the Illinois Health Facilities Planning Board (the Board), that he intended to discontinue Deicke Center. On April 12, 2007, the Board issued a notice of intent to impose a fine of $50,000 on Marklund based on Marklund's failure to obtain a permit prior to discontinuing Deicke Center. See 20 ILCS 3960/14.1(b)(5) (West 2006). Marklund was required to request a hearing before the Board (see 20 ILCS 3960/14.1(b)(6) (West 2006)) within 30 days of the notice (see 20 ILCS 3960/10 (West 2006)). However, it did not request a hearing until May 16, 2007. On June 13, 2007, the Board entered a default judgment against Marklund. On July 17, 2008, Marklund filed a complaint for administrative review.

In appeal No. 1—08—1359, the plaintiff, Bridgemark of West Frankland II, LLC (Bridgemark), operated Parkview, a 59-bed intermediate care facility. On October 4, 2004, Bridgemark notified the Board and the Illinois Department of Public Health (IDOPH) of its intent to close the facility.[1] On or about January 23, 2007, Bridgemark submitted a formal application for discontinuation of the Parkview facility. The application to discontinue Parkview was approved on May 1, 2007.

In the interim, on April 12, 2007, the Board issued its notice of

---

[1]On October 5, 2004, Bridgemark sent a letter of clarification to both the Board and the IDOPH stating that it did not intend to close the facility outright but intended to relocate its residents and to convert the facility to a 16-bed facility.

intent to impose a fine based on Bridgemark's discontinuation of Parkview without first obtaining a permit from the Board. See 20 ILCS 3960/14.1(b)(5) (West 2006). In the absence of a request for a hearing by Bridgemark within 30 days of the notice, on June 13, 2007, the Board issued an order of default and imposed a $160,000 fine on Bridgemark. On July 18, 2007, Bridgemark filed its complaint for administrative review.

Subsequent to the filing of the complaints for administrative review in these cases but prior to the circuit courts' review, the legislature amended section 14.1(b)(5). See Pub. Act 95—543, §5, eff. August 28, 2007 (amending 20 ILCS 3960/14.1(b)(5) (West 2006)). Under the amendment, a permit was no longer required in order to close a facility. In both cases, the circuit courts concluded that the amendment was procedural and applied retroactively. The courts reversed the default orders.[2] The Board timely appealed in both cases. On the Board's motion, this court consolidated the appeals.

## ANALYSIS

Section 3—102 of the Code of Civil Procedure (the Code) provides in pertinent part as follows:

"If under the terms of the Act governing the procedure before an administrative agency an administrative decision has become final because of the failure to file any document in the nature of objections, protests, petition for hearing or application for administrative review within the time allowed by such Act, such decision shall not be subject to judicial review hereunder excepting only for the purpose of questioning the jurisdiction of the administrative agency over the person or subject matter." 735 ILCS 5/3—102 (West 2006).

Section 10 of the Act required Marklund and Bridgemark to request a hearing within 30 days following notification of the Board's decision. 20 ILCS 3960/10 (West 2006). There is no dispute that they failed to request a hearing within 30 days. Therefore, the circuit court's review was limited to the issues of personal and subject matter jurisdiction. While there is no dispute that the Board had personal jurisdiction over Marklund and Bridgemark, the parties disagree as to whether the Board had subject matter jurisdiction.

Where an agency acts outside its statutory authority, it acts without jurisdiction. *Cesario v. Board of Fire, Police & Public Safety Commissioners*, 368 Ill. App. 3d 70, 77, 856 N.E.2d 500 (2006). Under the amendment, the Board no longer had the authority to require a permit prior to the closing of a facility or to impose a fine for the

---

[2]Judge Palmer's order also vacated the fine imposed on Marklund. Judge Hall's order did not specify that the fine imposed on Bridgemark was vacated.

failure to obtain a permit. Therefore, we must determine if the amendment applied retroactively so as to deprive the Board of subject matter jurisdiction in these cases.

## I. Standard of Review

Whether an amendment to a statute will be applied prospectively or retroactively is a matter of statutory construction. Therefore, we review this issue under the *de novo* standard of review. See *People v. Blanks*, 361 Ill. App. 3d 400, 407, 845 N.E.2d 1 (2005).

## II. Discussion

In determining whether a statute should be applied retroactively, Illinois courts utilize a three-part test. *Schweickert v. AG Services of America, Inc.*, 355 Ill. App. 3d 439, 442, 832 N.E.2d 213 (2005). First, "has the legislature clearly indicated the temporal, or retroactive, reach of the amended statute?" *Schweickert*, 355 Ill. App. 3d at 442, citing *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 37, 749 N.E.2d 964 (2001), citing *Landgraf v. USI Film Products*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). If not, the court determines if the amendment is procedural or substantive in nature. *Schweickert*, 355 Ill. App. 3d at 442. Where the legislature has not specified the application, amendments and repeals that are procedural may be applied retroactively, while those that are substantive may not. *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 331, 860 N.E.2d 246 (2006); see 5 ILCS 70/4 (West 2006). This principle applies to both criminal and civil enactments. *Allegis Realty Investors*, 223 Ill. 2d at 331. Finally, if the amendment is procedural, the court determines if it has a retroactive impact. Absent a retroactive impact, the amended statute will apply. *Schweickert*, 355 Ill. App. 3d at 442.

The parties agree that in amending the Act, the legislature did not specify its application. Therefore, we proceed to the determination of whether the amendment is procedural as the circuit court found or substantive as the Board argues.

As our supreme court has observed, "the line between 'substance' and 'procedure' may often be unclear." *Rivard v. Chicago Fire Fighters Union, Local No. 2*, 122 Ill. 2d 303, 310, 522 N.E.2d 1195 (1988). "Procedure is the machinery for carrying on the suit, including pleading, process, evidence and practice, whether in the trial court, or in the processes by which causes are carried to the appellate courts for review, or laying the foundation for such review." *Ogdon v. Gianakos*, 415 Ill. 591, 596, 114 N.E.2d 686 (1953). "Generally, a procedural change in the law prescribes a method of enforcing rights or involves pleading, evidence and practice." *Schweickert*, 355 Ill. App. 3d at 442.

At the time the cause of action in *Ogdon* arose, the law did not al-

low for substituted service. By the time the defendant was served with process, an amendment had been passed allowing for such service. The reviewing court noted that the statute did not create, define or regulate rights. Since the statute was merely a step toward obtaining jurisdiction, the court held that the amendment was procedural and applied retroactively. See *Ogdon*, 415 Ill. at 596-97; see also *Ores v. Kennedy*, 218 Ill. App. 3d 866, 871, 578 N.E.2d 1139 (1991) (amendment to the long-arm statute was procedural as it was not part of the law which created, defined or regulated rights and was not what made one a party to the suit).

On the other hand, a substantive change in the law establishes, creates or defines rights. *Schweickert*, 355 Ill. App. 3d at 443. In *United City of Yorkville v. Village of Sugar Grove*, 376 Ill. App. 3d 9, 875 N.E.2d 1183 (2007), the court dealt with the effect of an amendment on a boundary dispute between two municipalities. The municipalities had entered into boundary agreements, later determined to conflict with each other. After the agreements were entered into, the Illinois Municipal Code was amended to provide that a conflict rendered the first agreement unenforceable. The trial court held that the amendment did not apply retroactively. The appellate court agreed, explaining as follows:

> "Yorkville takes the position that the amendment to section 11—12—9 is procedural because '[i]t directly relates to a *method* of enforcing boundary line agreements authorized under section 11—12—9 and prescribes a *method* of enforcing rights and obtaining redress when two boundary line agreements conflict.' (Emphasis added.) We reject that position. In fact, the statute is silent as to the pleading, evidence and practice for establishing the unenforceability of allegedly conflicting agreements. The amendment is better characterized as creating a substantive *right* for a corporate authority to invalidate a prior boundary line agreement that conflicts with a more recent boundary line agreement to which the complaining authority is a party." (Emphasis in original.) *United City of Yorkville*, 376 Ill. App. 3d at 21.

At the time the Board defaulted Marklund and Bridgemark and imposed the fines, the Act provided in pertinent part as follows:

> "A person who discontinues a health care facility or a category of service without first obtaining a permit shall be fined an amount not to exceed $10,000 plus an additional $10,000 for each 30-day period, or fraction thereof, that the violation continues." 20 ILCS 3960/14.1(b)(5) (West 2004).

Effective August 28, 2007, section 14.1(b)(5) was amended by the addition of the following language:

> "For purposes of this subparagraph (5), facilities licensed under the Nursing Home Care Act, with the exceptions of facilities oper-

ated by a county or Illinois Veterans Homes, are exempt from this permit requirement. However, facilities licensed under the Nursing Home Care Act must comply with Section 3—423 of that Act and must provide the Board with 30-days' written notice of its intent to close." 20 ILCS 3960/14.1(b)(5) (West Supp. 2007).

There is no dispute that Deicke Center and Parkview were facilities licensed under the Nursing Home Care Act and that to discontinue these facilities, Marklund and Bridgemark were only required to provide the Board with a 30-day notice.

Both prior to and after its amendment, section 14.1(b)(5) provided the method by which facilities such as Deicke Center and Parkview could close their doors. Prior to the amendment, obtaining a permit was a necessary step in that process, and a fine could be imposed for failure to comply with the permit requirement. The Board does not argue that it could have refused to allow a facility to close where a party had complied with the requirements for obtaining a permit. See 20 ILCS 3960/14.1(a) (West 2006). By eliminating the permit require-ment, the amendment merely altered the steps to be taken in closing down a facility. We conclude that the amendment in this case was procedural in nature.

The final step is to determine if applying the amendment retroactively will have a retroactive impact. A statute will have a retroactive impact or effect if it "(1) impairs rights that a party pos-sessed when it acted, (2) increases a party's liability for past conduct, or (3) imposes new duties with respect to transactions already completed." *Schweickert*, 355 Ill. App. 3d at 444. We will not find that a statute operates retroactively because it upsets expectations based on prior law; rather, we consider whether the amendment attaches new legal consequences to events completed before the statute was changed. *Schweichkert*, 355 Ill. App. 3d at 444.

We conclude that the amendment to the Act does not have a retroactive impact. These cases were pending on review at the time the amendment took effect and, therefore, the judgment was not final. See *White v. Sunrise Healthcare Corp.*, 295 Ill. App. 3d 296, 301, 692 N.E.2d 1363 (1998). The Board had no vested right in a statutory penalty that no longer existed. *White*, 295 Ill. App. 3d at 301.

In summary, the August 28, 2007, amendment to section 14.1(b)(5) of the Act was procedural and applied retroactively, depriving the Board of subject matter jurisdiction in both cases. Therefore, the circuit courts correctly reversed the Board's decisions.

Affirmed.

R.E. GORDON, P.J., and WOLFSON, J., concur.