**Dean A. DICKIE, Plaintiff,**

v.

**The CITY OF TOMAH, Defendant.**

**No. 91 C 4528.**

United States District Court,
N.D. Illinois, E.D.

Nov. 12, 1991.

Dean A. Dickie, William Joseph Kunkle, Jr., William Knight Blanchard, Jr., Pope & John, Ltd., Chicago, Ill., for plaintiff.

David A. McGuire, Michael L. Siegel, Carlo E. Poli, Stone, McGuire & Benjamin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

### Introduction

The plaintiff, Dean A. Dickie, is a citizen of Illinois and is the former owner of approximately 26.94 acres of land in Tomah, Wisconsin. The defendant, the City of Tomah, is a municipality located in Monroe County, Wisconsin. Mr. Dickie has sued Tomah to recover the litigation expenses he incurred in contesting Tomah's condemnation of his property. He also wants to recover interest on the condemnation award for the twenty months that passed between the date of the taking and the date he was finally compensated. The complaint alleges that under Wisconsin's law of eminent domain Mr. Dickie is entitled to both his litigation expenses and the interest. Seeking over $50,000 in relief, Mr. Dickie has invoked this court's diversity jurisdiction.

The City of Tomah has moved to dismiss the action under Rule 12(b)(2) on the grounds that this court lacks personal jurisdiction over it. In the alternative, Tomah has moved to dismiss for improper venue.

### Background [1]

In early 1986, Tomah, acting through its Common Council, sought to improve its income-producing fairgrounds by purchasing the Dickie property in a private transaction. The Tomah Common Council expressly agreed during an open meeting to purchase the Dickie property for a purchase price not to exceed $130,000. Dickie accepted Tomah's offer to purchase the property. Tomah, however, never proceeded with the sale on the terms approved by the Common Council.

On January 13, 1988, Tomah's Common Council authorized the condemnation of Dickie's property pursuant to Wis.Stat. § 32.01 *et seq.* Wisconsin law required the city to mail Dickie a document known as a "Jurisdictional Offer" setting forth an offer to purchase the property and informing him of various provisions of the condemnation statute. Tomah sent its Jurisdictional Offer, which Dickie received on June 16, 1988, to Dickie's business address in Chicago, Illinois. It offered $9,000 as compensation for the taking—considerably less than the $130,000 figure proposed by Tomah's Common Council in 1986.

After Dickie rejected Tomah's $9,000 Jurisdictional Offer, Tomah filed a Petition for Condemnation Proceedings in order to have the Condemnation Commissioners of Monroe County determine the "just compensation" Dickie was entitled to. The Condemnation Commissioners held a hearing on July 3, 1989 and determined that the fair market value of the Dickie property immediately before the taking was $130,000.

On September 1, 1989, Dickie filed a timely Notice of Appeal of the Condemnation Commission's decision. Pursuant to Wisconsin law, the appeal was entered as an action pending in the Circuit Court of Monroe County with Dickie as the plaintiff and the City of Tomah as the defendant. On October 3, 1989 Dickie moved to voluntarily dismiss his appeal. Tomah, however, opposed Dickie's motion for voluntary dismissal on the grounds that it would be deprived of an opportunity to litigate the issue of the fair market value of the Dickie property. Tomah had missed the deadline to appeal the Condemnation Commission's decision figuring that it had no need to

---

**1.** This summary of the facts is based on the allegations in Plaintiff's complaint which are taken as true for purposes of this motion. *See*

*Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir. 1987).

because Dickie's appeal had already initiated a case in state court.

The trial court sided with Tomah and voided Dickie's notice of dismissal. The trial court also barred the Clerk of Courts of Monroe County from releasing any of the $136,197.55 [2] which Tomah had paid to the Clerk pending the outcome of the dispute.

A Wisconsin appellate court reversed the trial court and reinstated Dickie's Notice of Dismissal. *See Dickie v. City of Tomah*, 160 Wis.2d 20, 465 N.W.2d 262 (Ct.App. 1990). Tomah sought but was denied review by the Wisconsin Supreme Court. As a result, Dickie's effort to voluntarily dismiss was given effect and the determination of the Condemnation Commission was reinstated. On March 21, 1991, the trial court order the Clerk's office to turn over to Dickie the $136,197.55 placed there by Tomah on September 11, 1989.

Dickie now brings this action claiming that under Wisconsin law governing eminent domain, he is entitled to attorneys' fees and additional interest. For reasons stated below, this court grants Tomah's motion to dismiss.

### Discussion

### I. Personal Jurisdiction Over Tomah

### A. *The Illinois Long–Arm Statute*

Dickie contends there is personal jurisdiction over Tomah because Tomah had contact with Dickie in Illinois during the course of the eminent domain proceedings. In his complaint, Dickie alleges:

> This Court has jurisdiction over Tomah by reason of the fact that on or about July 14, 1988, Tomah made its Jurisdictional Offer to purchase the Dickie Property pursuant to its power of eminent domain as provided for in Wis.Stat. § 32.-06(3). The Jurisdictional Offer was made to Dickie through the United States mail and was received by him in Chicago, Illinois on July 16, 1988. Tomah commenced the condemnation process against the Dickie property with full

knowledge that Dickie was a citizen of the state of Illinois and a practicing attorney in Illinois as well. As the litigation over the Dickie Property proceeded, Tomah repeatedly contacted Dickie regarding the litigation and served numerous papers upon Dickie in Chicago, Illinois. Tomah knew that the majority of the legal work in the litigation over the Dickie Property was being performed in Chicago. This conduct falls within the meaning of § 2–209(a)(1) of the Illinois Code of Civil Procedure. Ill.Rev.Stat. ch. 110, ¶ 2–209(a)(1) (1983).

Complaint, ¶ 4.

This court has personal jurisdiction over a defendant only if the Illinois long-arm statute would have given Illinois jurisdiction and the exercise of such jurisdiction would not violate due process. *See Turnock v. Cope*, 816 F.2d 332, 334 (7th Cir. 1987). In the passage of the complaint quoted above, Dickie alleges that Tomah's conduct was sufficient to create personal jurisdiction under a provision of Illinois' long-arm statute which states that:

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of such acts:
>
> (1) The transaction of any business within the State.

Ill.Rev.Stat. ch. 110, ¶ 2–209(a)(1) (1983).

It was pointed out in the parties' briefs that effective September 7, 1989 (in the midst of the Dickie–Tomah eminent domain battle), the Illinois long-arm statute was amended to include a provision stating:

> A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

Ill.Rev.Stat. ch. 110, ¶ 2–209(c). That amendment has apparently made ¶ 2–209

---

**2.** That sum of money included the award of the Condemnation Commissioners ($130,000), plus interest ($6,553.42) less prorated taxes ($335.88).

co-extensive with minimum due process requirements and obviates the necessity of the defendant's engaging in a statutorily enumerated act in order to establish jurisdiction over it. *See FMC Corp. v. Varonos,* 892 F.2d 1308, 1310 n. 5 (7th Cir.1990).

In *Ores v. Sproull,* 218 Ill.App.3d 866, 161 Ill.Dec. 493, 578 N.E.2d 1139 (1st Dist. 1991), an Illinois appellate court ruled that the amendment to the long-arm statute applies retroactively. The *Ores* court reasoned that because the amendment was procedural, as opposed to substantive, it took effect retroactively. The *Ores* decision, however, overlooked the constitutional implications of a retroactive extension of personal jurisdiction. It was based solely on canons of statutory construction provided in *Young v. Chicago Transit Authority,* 209 Ill.App.3d 84, 154 Ill.Dec. 18, 568 N.E.2d 18 (1st Dist.1990).

This court noted in *Blanco Oso International Trading Co. v. Southern Scrap Metal Co.,* 735 F.Supp. 294 (N.D.Ill.1990), that retroactive extension of personal jurisdiction may well be unconstitutional, however. Judge Shadur has also expressed concern that haling an individual into court for conduct that would not have subjected that party to suit when the action was taken would present a due process problem. *See Bankers Leasing Association, Inc. v. Tompkins, McGuire & Wachenfeld,* 734 F.Supp. 309 (N.D.Ill.1990) (suggesting that retroactive application of amendment extending reach of Illinois' long-arm statute is not permitted by Due Process Clause); *but see Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1983) (retroactive application of legislation does not violate due process if retroactive application is justified by a rational legislative purpose).

Whether the amendment extending the reach of Illinois' long-arm statute applies retroactively need not be answered here, however, because Illinois would lack personal jurisdiction over Tomah under either the old statute or the amended statute. The City of Tomah was not "transacting business" in Illinois so its conduct is not included in ¶ 2–209(a)(1) of the long-arm statute. In any event, Tomah did not have the "minimum contacts" with Illinois required by the Due Process Clause in order for an Illinois court to have personal jurisdiction over it.

**B.** *Tomah Was Not Transacting Business in Illinois*

Tomah's condemnation of Dickie's land and the subsequent litigation it spawned do not count as "transacting business." In order for Tomah to have constitutionally condemned Dickie's property, that property must have been taken for a "public" use rather than for private or commercial purposes. While it is true that governmental entities must frequently resort to the private marketplace in furthering public ends and that some governmental conduct undoubtedly qualifies as "transacting business," condemning property under a city's eminent domain power (and then litigating the matter) does not. Dickie presents no authority to support the proposition that a governmental entity's exercise of its eminent domain power constitutes a business transaction.

The exercise of eminent domain power is an act of sovereignty. Only a sovereign can exercise that power and it is exercised outside the realm of business transactions for the benefit of the public. As the Supreme Court has said of eminent domain, "it is intimately involved with sovereign prerogative." *Louisiana Power & Light v. City of Thibodaux,* 360 U.S. 25, 28, 79 S.Ct. 1070, 1072, 3 L.Ed.2d 1058 (1959). By contrast, the courts have held that "the transaction of business" language of the Illinois long-arm statute refers to commercial activity. "The minimum relationship required is that the plaintiff's suit be one which lies in the wake of the *commercial activities* by which the defendant submitted to the jurisdiction of the Illinois courts." *Young v. Colgate–Palmolive Co.,* 790 F.2d 567, 570 (7th Cir. 1986), quoting *Hoffman v. Inland Oil & Transport Co.,* 98 Ill.App.3d 1010, 54 Ill. Dec. 306, 311, 424 N.E.2d 1209, 1214 (5th Dist.1981).

## C. Due Process

 Even if the amendment to Illinois' long-arm statute were applied retroactively and Illinois would extend its jurisdiction to the outer bounds of due process in this case, there would still not be personal jurisdiction over Tomah. In order for this court constitutionally to exercise jurisdiction, Tomah must have had "minimum contacts" with Illinois sufficient to give Tomah fair warning that it might be required to defend itself there. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1984). In addition, the exercise of jurisdiction must not otherwise offend "fair play and substantial justice," *i.e.,* the exercise of jurisdiction must be "reasonable." *Id.*[3]

Dickie alleges that Tomah mailed its Jurisdictional Offer to his Illinois business address and that it repeatedly contacted him during the litigation and served numerous papers on him in Illinois. Such conduct, however, does not satisfy the "minimum contacts" requirement, a result unchanged by the fact that Dickie's legal work was done in Illinois. As the Supreme Court has stated:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Burger King,* 471 U.S., at 475, 105 S.Ct. at 2183, quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

The City of Tomah did not invoke the benefits and protections of Illinois' laws.

Making a Jurisdictional Offer and then litigating the validity of the condemnation (the acts which allegedly created jurisdiction) were done pursuant to Wisconsin statute. While acting pursuant to Wisconsin's laws on eminent domain, a matter of uniquely local concern, Tomah had no reason to foresee that its conduct might require it to have to defend itself in an Illinois court. The city's contacts with Illinois were simply too modest to cause it to "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980).

In addition to failing the "minimum contacts" prong of the due process analysis, extending jurisdiction over Tomah would also fail the "reasonableness" prong. The "reasonableness" test, also known as the "fair play and substantial justice" test, *see Burger King,* 471 U.S., at 476, 105 S.Ct., at 2183, and *see Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987), allows this court in "'appropriate case[s]' to 'evaluate the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* 471 U.S. at 477, 105 S.Ct. at 2184, quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S., at 292, 100 S.Ct., at 564.

An evaluation of "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and the "shared interest of the several States in furthering fundamental substantive social policies" demonstrates that the exercise of jurisdiction over Tomah would be unreasonable. Our federal system depends on one

---

**3.** *McLeod v. Harmon,* 149 Ill.App.3d 378, 102 Ill.Dec. 831, 500 N.E.2d 724 (3d Dist.1986), cited by Tomah, provides a hint that perhaps *Burger King's* test should be applied more stringently when the defendant is a governmental entity rather than a private actor. The court in *McLeod* applied the traditional "minimum con-

tacts" inquiry in a case in which the defendant was the State of Oklahoma, but it also stated that "[f]or due process purposes, the independent States should not be treated like manufacturers of products." *Id.* at 383, 102 Ill.Dec. 831, 500 N.E.2d 724.

jurisdiction's respect for the sovereignty of another. In this case Tomah's exercise of its eminent domain power is a core attribute of *sovereignty* which other jurisdictions are bound to respect. *See Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 28, 79 S.Ct. 1070, 1072, 3 L.Ed.2d 1058 (1959). This case, however, will apparently require the interpretation of Wisconsin's eminent domain law in a factual context never before presented.

■ Indeed, Dickie's dispute with Tomah has already required Wisconsin courts to decide issues of first impression under that state's law of eminent domain. *See Dickie v. City of Tomah,* 160 Wis.2d 20, 465 N.W.2d 262 (Ct.App.1990). The present lawsuit will require the resolution of additional matters of first impression regarding a condemnee's rights to attorney's fees and interest when the condemnee voluntarily dismisses his own appeal of the Condemnation Commission's decision. The interstate system's interests in the efficient resolution of controversies and in the furthering of fundamental substantive social policies require that one state not extend jurisdiction over cases which implicate fundamental attributes of sovereignty of another state, particularly when the lawsuit involves issues of first impression. It would therefore be unreasonable for an Illinois court (or a federal court in Illinois) to extend jurisdiction over Tomah in this case.

It may in fact be unreasonable for *any* federal court—in Illinois or in Wisconsin—to hear this action. Although the defendant did not raise the matter of abstention, it is an issue that may be raised by the court *ex mero motu. See AFA Distributing Co. v. Pearl Brewing Co.,* 470 F.2d 1210, 1213 (4th Cir.1973); *see also* C. Wright, A. Miller and E. Cooper, 17A *Federal Practice and Procedure:* Jurisdiction 2d § 4245. Because this court finds the issue of personal jurisdiction dispositive, it will not dismiss on the grounds of abstention. Nonetheless, this court can not but remark upon the striking similarities between this case and *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

■ *City of Thibodaux* is a leading example of the category of abstention articulated in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *Burford* established a doctrine of abstention in which federal courts abstain in order to avoid needless conflict with the administration by a state of its own affairs when a substantial public concern is involved. Although federal courts ordinarily have a duty to exercise jurisdiction whenever they legally can, *see Willcox v. Consolidated Gas Co.,* 212 U.S. 19, 29 S.Ct. 192, 53 L.Ed. 382 (1909), the abstention doctrine constitutes a noteworthy exception.

In *City of Thibodaux,* a landowner challenged a municipality's attempt to condemn its property. The condemnee removed the condemnation action itself to federal court on the basis of diversity and challenged the taking in that action. In *City of Thibodaux,* the state's condemnation law was considered unsettled. The Supreme Court upheld the trial court's abstention. Although the proper understanding of *City of Thibodaux* is still debated, one school of thought believes that it teaches that abstention is proper in eminent domain cases where the state law is unsettled. *See* Charles A. Wright, *Law of Federal Courts* § 52 (1983).

Unlike *City of Thibodaux,* this case does not involve a challenge to the legitimacy of Tomah's condemnation of Dickie's property. It does, however, relate to the substantive rights of a condemnee: the rights to attorneys' fees and foregone interest when litigating a Wisconsin municipality's exercise of eminent domain. Moreover, as mentioned above, Wisconsin law appears unsettled at least inasmuch as the case involves issues of first impression. These considerations militate in favor of a federal court's abstaining from hearing this particular case.

*Conclusion*

For the foregoing reasons, Defendant's motion to dismiss is granted.