Sophie **STARZENSKI,** Kazmer Starzenski, and Gennie Starzenski, Plaintiffs,

v.

**CITY OF ELKHART,** Elkhart Health and Sanitation Department, Leroy Robinson, Dir. of Health and San. Dept., Ray Minegar, Health Enforcement Officer, Fran Curry, Health Enforcement Officer, Richard L. Moore, Street Comm'r, Ernie Hill, Elkhart City Police Officer, and Larry Kasa, Elkhart City Police Officer, Defendants.

No. 3:93cv0401.

United States District Court, Northern Dist. Indiana, South Bend Division.

Jan. 10, 1994.

William J. Cohen, Elkhart, for plaintiffs.

Robert T. Sanders III, Matthew A. Yeakey, Paul D. Eash, Elkhart, for defendants.

### MEMORANDUM AND ORDER ON ABSTENTION ISSUE

ALLEN SHARP, Chief Judge.

On February 8, 1993, workers for the City of Elkhart (City) came onto plaintiffs' prop-

erty at 1015 West Garfield without their permission and without a warrant and began removing the plaintiffs' personal property from the yard and from within the house. The City had repeatedly given notice of the violations and had ordered Sophie to clean the property or the City would clean it for her. The property removed was hauled to a landfill and dumped.

Gennie and Kazmer Starzenski are co-owners of the property with Sophie Starzenski. Gennie and Kazmer do not reside in Indiana. Sophie professes to live at 1015 West Garfield, although the City claims the property was vacant. Sophie arrived at the home while the City was removing her property and demanded that the City cease and desist. When the City refused, Sophie went to an attorney who obtained a temporary restraining order from Elkhart Superior Court No. 2 to stop the cleanup. Before the TRO was obtained, Sophie returned to her property and tried to stop the cleanup. She was arrested for disorderly conduct and taken to jail. That charge has since been dropped. The Elkhart Superior Court No. 2 has issued a preliminary injunction against the City's cleanup which remains in effect.

The Starzenskis bring this action under 42 U.S.C. § 1983, claiming that the City's warrantless entry into the plaintiffs' home and its removal of the plaintiffs' personal property was a violation of the Fourth Amendment (Count I). The City contends that it was acting lawfully in accordance with Indiana's Unsafe Building statute, IC 36–7–9–1 et seq., and that the Starzenskis were afforded all process due. In addition, plaintiff Sophie Starzenski seeks damages under § 1983 for false arrest, claiming that excessive and unnecessary force was used and that her rights under the Fourth Amendment were violated (Count II).

An action essentially identical to Count I is still pending in the Elkhart Superior Court No. 2. At the pretrial conference on September 24, 1993, this court raised its concern over the issue of abstention. The parties have briefed that issue, oral argument was held on December 14, 1993, and the court is now prepared to rule on it.

### DISCUSSION

Federal courts possess a "virtually unflagging obligation" to exercise the jurisdiction given them. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). The pendency of an action in state court is no bar to proceedings concerning the same matter in federal court. *Id.* Only when exceptional circumstances exist may a federal court abstain from exercising its jurisdiction and defer to the concurrent jurisdiction of a parallel state court proceeding. *Id.* at 818, 96 S.Ct. at 1246–47.

### Abstention Doctrines

*Colorado River* recognized four categories of circumstances when it is appropriate for a federal court to abstain from exercising the jurisdiction with which it is endowed: 1) *Pullman*[1] abstention, in cases where a state court determination of pertinent state law might moot or change the posture of a federal constitutional question; 2) *Thibodaux*[2] abstention, where the federal court faces difficult questions of state law bearing on policy problems of substantial public importance transcending the case then at bar, or *Burford*[3] abstention, where federal review of the case would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern; 3) *Younger*[4] abstention, where federal jurisdiction has been invoked to restrain (through *injunctive* relief) state criminal proceedings, state nuisance proceedings antecedent to a criminal prosecution (i.e., obtaining the closure of pornography theatres), or collection of state taxes; and 4) *Colorado*

---

1. *See Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

2. *See Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

3. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

4. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

*River*[5] abstention, where considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, favor deference to the concurrent state court proceeding. *See Colorado River,* 424 U.S. at 814–17, 96 S.Ct. at 1244–46. The Supreme Court in *Colorado River* did not consider the fourth category to be truly an "abstention" doctrine, *see id.* at 817–18, 96 S.Ct. at 1246–47, but it has generally been treated as such by lower courts and commentators.

■ It bears noting that since the Supreme Court decided *Colorado River, Younger* abstention has been expanded to civil proceedings in which important state interests are involved. *See Ohio Civ. Rights Comm'n v. Dayton Christian Schools,* 477 U.S. 619, 627, 106 S.Ct. 2718, 2722–23, 91 L.Ed.2d 512 (1986). This expansion of the *Younger* doctrine includes 42 U.S.C. § 1983 civil rights actions seeking to enjoin pending state judicial or quasi-judicial (administrative) civil proceedings which allegedly violate the plaintiff's federal constitutional rights. *See Trainor v. Hernandez,* 431 U.S. 434, 450, 97 S.Ct. 1911, 1921, 52 L.Ed.2d 486 (1977) (Brennan, J., dissenting); *see also Ohio,* 477 U.S. 619, 106 S.Ct. 619. However, *Younger* abstention is equitable abstention—it is the refusal of a federal court, in the interests of comity and federalism, to **enjoin pending** state proceedings. Federal injunctions in such cases would violate longstanding public policy against federal court interference with state court proceedings and be disruptive to the ideals of "Our Federalism." *Younger,* 401 U.S. at 43–44, 91 S.Ct. at 750–51.

### Parallel Proceedings

■ The first issue for this court in determining whether abstention is appropriate is whether there are in fact concurrent, parallel state proceedings. *Interstate Material Corp. v. City of Chicago,* 847 F.2d 1285, 1287 (7th Cir.1988). Without parallel proceedings, abstention is inapplicable. *Id.* The requirement is of parallel suits, not identical suits. *Id.* at 1288. A suit is parallel when substantially the same parties are con-

temporaneously litigating substantially the same issues in another forum. *Id.*

■ Count I of the federal complaint is parallel to ongoing state court proceedings. The issue in both cases is identical: the constitutionality of the City's (through its employees) actions in entering the Starzenski home and removing their effects without a warrant. While there are two defendants for Count I of the federal case who are not present in the state case, namely Gennie and Kazmer Starzenski, their presence or absence is immaterial. The naming of additional parties will not in and of itself serve to avoid the abstention doctrines. *See Lumen Construction v. Brant Construction,* 780 F.2d 691, 695 (7th Cir.1985); *see also Interstate,* 847 F.2d at 1288. The relief sought against the defendants is the same either way. The defendants are essentially the same; it is the "City's" actions which are really being litigated here. There is more than a substantial likelihood that the state litigation would dispose of all claims presented in Count I of the federal case. *Lumen Construction,* 780 F.2d at 695. The state court is competent to resolve the plaintiffs' constitutional objections to the City's warrantless seizure.

Count II on the other hand, Sophie's claim of unlawful arrest and excessive force, does not have a state parallel. The unlawful arrest claim does not appear in the state complaint. Officers Larry Kasa and Ernie Hill are not defendants in the state court case. Abstention is inapplicable to Count II of this case. Of course, this court could dismiss (abstain from) Count I and go forward with Count II as a separate cause of action. While the resolution of Count I will have some bearing on the determination of the reasonableness of the officers' actions in arresting Sophie, Count I is unrelated to the claim of excessive force. Whether the Sanitation Department was unlawful in its removal of plaintiffs' property without a warrant is only peripherally related to whether the police acted unlawfully in arresting Sophie for disorderly conduct. The defendants are distinctly different as to the two counts.

---

5. *See Colorado River,* 424 U.S. 800, 96 S.Ct. 1236.

For the purposes of this memorandum, this court will consider the state and federal proceedings to be parallel, thus necessitating further inquiry into the abstention issue.

### Pullman Abstention

 The defendants' own arguments defeat their request for *Pullman* abstention. *Pullman* abstention is available only when there is an "unsettled question of state law." *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). The issue of state law must be uncertain, and the state statute must be "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question." *Babbitt v. United Farmworkers National Union*, 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979).

 *Pullman* abstention is appropriate when a state court might fairly choose to interpret a state statute in such a way as to avoid a confrontation with the federal Constitution. Under *Pullman*, this court would **retain jurisdiction** over the case until the state court rendered its interpretation of state law. *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411, 416, 84 S.Ct. 461, 465, 11 L.Ed.2d 440 (1964). If the state court interpreted the state statute so as to avoid a constitutional challenge, the federal case would become moot.

In *Pullman*, 312 U.S. 496, 61 S.Ct. 643, the plaintiffs were challenging an order by the Texas Railroad Commission as unconstitutional. The Supreme Court held that the district court should have abstained from deciding the case until the Texas court had determined whether the Commission had the authority to issue the order in question. If the Texas court interpreted its law so as to deny the Commission such authority, the order would be invalid and therefore the federal constitutional issues would be avoided. *See id.* at 501, 61 S.Ct. at 645–46.

 This case does not present a constitutional issue that may "be mooted or presented in a different posture by a state court determination of pertinent state law." *See Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244–45. It does not matter whether Indiana law permitted the warrantless entry;

a warrantless entry occurred. This case is not like *Pullman* where the plaintiffs wanted to prevent the Commission from enforcing its allegedly unconstitutional order; the milk has already been spilt here. The plaintiffs are seeking damages under § 1983 for what the City has done, whether Indiana law permitted it or not. There is no determination that could be made by the state court as to the state law which would moot the plaintiffs' federal constitutional claims.

Of course, the issue of whether the Unsafe Building Act does or does not allow warrantless entries does have bearing in this case. It is highly relevant to whether this court would strike down as unconstitutional a portion of that law if this court finds that such entries are unconstitutional. However, the defendants make absolutely no argument that the law is unsettled. Indeed, defendants state that the state court has already "painstakingly" interpreted the Unsafe Building Act and it does not require a warrant for the City to do what it did. Elkhart, Hill, and Kasa Brief in Support of Abstention at 4. The state court had no difficulty in finding that, "There is nothing in the Unsafe Building Act that mandates obtaining judicial warrants to enforce every cleanup order." Order of Elkhart Superior Court No. 2, May 4, 1993, Cause No. 20D029302CP107, at 4. *Pullman* abstention requires unsettled law, and there is no argument before this court that the law is unsettled.

The defendants believe that since the state court has determined in a preliminary hearing that the warrantless cleanup was not unlawful or unconstitutional, that "moots" the federal issues and *Pullman* abstention is directly applicable to this case. That is simply not the meaning of *Pullman*. While the defendants may have a valid collateral estoppel or res judicata defense, such is not now before this court and is immaterial to an abstention decision. There is no "determination of pertinent state law" that the state court could make that would moot the plaintiffs' claim that an unconstitutional warrantless entry took place.

### Burford Abstention

 *Burford* abstention requires a federal court to abstain when its decision on a

question of state law would disrupt state efforts to establish coherent policy on a matter of substantial importance to the state.[6] In *Burford,* Texas had established a complex state-law-based regulatory scheme for the conservation of oil and gas. *See* 319 U.S. at 318, 63 S.Ct. at 1099. The task of administering the regulations was vested in the Texas Railroad Commission, *id.* at 320, 63 S.Ct. at 1100–01, and judicial review of the Commission's orders were funnelled by the legislature into a single court—Travis County. *Id.* at 326, 63 S.Ct. at 1103–04. This was done to avoid "intolerable confusion" by vesting all state judicial review of this very complex area in a court with "specialized knowledge." *Id.* at 327, 63 S.Ct. at 1104. The Texas court system was intimately involved in creating and shaping the regulatory scheme. *See id.* at 326–27, 63 S.Ct. at 1103–04.

However, the plaintiffs in *Burford* brought their case in federal district court, thereby bypassing the state-established and carefully devised system of judicial review. The federal courts handled less than ten percent of the cases involving the regulatory scheme, and federal court involvement was creating confusion, delay, and conflict in the regulatory administration. *Id.* at 327, 63 S.Ct. at 1104. The Supreme Court found that the federal courts could make little contribution to the "well organized system of regulation and review which the Texas statutes provide." *Id.* In one case, the federal court flatly disagreed with the position taken later by the state court as to state law. *Id.* The federal court interference in the state regulatory scheme was proving very difficult for the state; in one instance, the governor had to declare martial law. *Id.* at 327–30, 63 S.Ct. at 1104. The Supreme Court held that in cases such as *Burford,* federal courts should dismiss cases in favor of state court review.

There is no justification for dismissal under *Burford* of the case now before this court. There is no complex matter of state law here which would be better decided by an experienced state system with special competence, or that would entangle this court in a "skein of state law." *See New Orleans Public Service v. Council of City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989). The plaintiffs are asking this court to review the City's actions under the protection afforded by the federal constitution. While a state court is certainly competent to do that, Congress has decreed in passing 42 U.S.C. § 1983 that the plaintiffs may bring their action in a federal district court.

### *Thibodaux* Abstention

*Thibodaux* abstention is often considered a variation of *Burford* abstention. *See Dickie v. City of Tomah,* 782 F.Supp. 370, 375 (N.D.Ill.1991); *see also Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244–45 (combining *Thibodaux* and *Burford* in one abstention category). Both *Thibodaux* and *Burford* involve areas of significant local interest. However, while *Burford* concentrates on the avoidance of confusion created by federal courts' interference with the establishment of a coherent state policy, *Thibodaux* focuses on the desirability of allowing state courts to decide unsettled questions of state law in areas of particular local concern.[7]

*Thibodaux* makes great sense pragmatically. Only state courts can make definitive interpretations of unclear state law; while federal judges often must interpret state law, such interpretations are little more than "tentative forecasts." *See Thibodaux,* 360 U.S. at 29, 79 S.Ct. at 1073. When unclear state law is coupled with a matter of particular local concern, such as the power of eminent domain, issues intimately involved with a state's sovereignty arise. *See id.* at 28, 79 S.Ct. at 1072–73.

---

**6.** *Burford* abstention requires a federal court to **dismiss** a case in favor of complete state adjudication. *See* 319 U.S. at 334, 63 S.Ct. at 1107–08. Ultimate federal question review is preserved by United States Supreme Court jurisdiction over state supreme court decisions. *Id.*

**7.** *Thibodaux* abstention, unlike *Burford,* requires a **stay** of federal proceedings rather than dismissal. The parties may return to federal court when the question of unclear state law has been adjudicated in state court. *Thibodaux,* 360 U.S. at 29, 79 S.Ct. at 1073.

In *Thibodaux*, the question was whether a city had the condemnation power that it claimed under a heretofore uninterpreted state statute. *Id.* at 30, 79 S.Ct. at 1073–74. The state attorney general had interpreted the statute as not conveying such power in a similar situation, but the state courts had never decided the matter. *Id.* The federal court abstained, because it did not want to interpret the statute so as to bind the parties before it when a potentially different state court interpretation would bind all other litigants thereafter. *Id.* Also, considering the distinctly local nature of the statute,[8] "informed local courts may find meaning not discernible to the outsider." *Id.*

The Supreme Court decided *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959) on the same day as *Thibodaux*. While the eminent domain issue was similar, *Allegheny County* did not require abstention. *Id.* While other factors were involved, it was highly significant that the state law in *Allegheny County* was "clear and certain." *Id.* at 196, 79 S.Ct. at 1067.

■ *Thibodaux* abstention is a **stay** of federal proceedings until the meaning of a disputed state statute is resolved by state court. *See Thibodaux*, 360 U.S. at 29, 79 S.Ct. at 1073. In the present case there is absolutely no contention that the state law is unclear. *See supra.* More importantly, even if the statute involved was unclear as to the requirement of a warrant, that would not affect the determination of constitutionality of the warrantless entry. Whether the warrantless entry and seizure of property, which has occurred and cannot be undone, was unconstitutional is a matter of **federal** law. Whether the Indiana Unsafe Building Act permitted the City's actions is only peripherally related to whether those actions violated the federal constitution, and whether the plaintiffs deserve compensation therefore.

### *Younger* Abstention

■ There are many elements of the present case which summon the notions of equitable abstention embodied in *Younger* and its civil progeny. The plaintiff is seeking federal injunctive relief (as well as damages), based on constitutional grounds, to prevent the City from acting. The City is involved in a nuisance action against the plaintiff. There is also a pending state judicial proceeding. However, the plaintiffs here are not seeking to enjoin any pending state proceeding; indeed, the state court proceeding is not an enforcement action by the City. It is an action brought by the Starzenskis **against** the City, parallel to the action before this court. The City's administrative proceedings against the Starzenskis and their property have culminated; the Starzenskis lost. Now it is simply a matter of the Starzenskis attempting to hold the City liable for what they contend was an unconstitutional search and seizure, and to stop the City from furthering such action. This court (nor the state court) is not being asked to prevent an adjudication by the City or the state, only to prevent further allegedly illegal action and to award damages for acts which have already occurred.

### *Colorado River* Abstention

■ Federal courts have a "virtually unflagging" obligation to exercise the jurisdiction given them. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. Generally, the pendency of an action in a state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction. *Id.* Rarely, however, exceptional circumstances exist which permit the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration. *Id.* at 818, 96 S.Ct. at 1246–47.

The Seventh Circuit has noted that:

[T]here are at least ten factors that a district court can consider in deciding whether 'exceptional circumstances' exist that would justify deference to the state courts under the Colorado River doctrine.... 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the

---

**8.** The issue of the power of eminent domain touches on the relationship of city and state (*City of Chicago v. Fieldcrest Dairies, Inc.*, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355) and is intimately involved with sovereign prerogative. *Thibodaux*, 360 U.S. at 28, 79 S.Ct. at 1072–73.

desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Caminiti and Iatarola v. Behnke Warehousing,* 962 F.2d 698, 701 (7th Cir.1992). The state in this case has not assumed jurisdiction over property (factor one). The federal forum is not at all inconvenient as considered under factor two. Since Count II of the federal case involves defendants and a federal claim entirely lacking in the state case, abstention in this case would not avoid piecemeal litigation (factor three). While the state action was begun first (factor four), it appears that such was a matter of necessity in obtaining an emergency restraining order against the City's ongoing action. This court will not penalize the plaintiffs for filing first in state court in this case. Under factor five, the source of governing law in this case is entirely federal. This case is based on alleged violations of the Fourth Amendment with damages as provided by 42 U.S.C. § 1983. Factor six is not dispositive—both the state and the federal court are capable of protecting the plaintiffs' rights. While the state case appears to be somewhat farther along, factor seven does not weigh heavily either way. Likewise, factor eight does not weigh heavily in this analysis as both the state and federal courts involved are courts of general jurisdiction and capable of adjudicating this case. Factor nine, the availability of removal, is not dispositive. Whether or not removal would have been possible, it is certainly now too late. Finally, based upon the record, this court does not consider the plaintiffs' federal case to be either vexatious or contrived (factor ten).

In deciding not to abstain under the "exceptional circumstances" test of *Colorado River,* this court places primary emphasis on factors three and five. As stated above, piecemeal litigation would not be avoided by abstention in this case. Also, and far more importantly in the view of this court, this case is based entirely on the application of federal law. *See Illinois Bell Telephone Co. v. Illinois Commerce Commission,* 740 F.2d 566 (7th Cir.1984).

### Conclusion

This court warns the plaintiffs that by seeking an unreserved Indiana court final adjudication of their rights, they may well be electing to forgo their right to relitigate the same issues in a federal district court. *See England,* 375 U.S. at 417, 84 S.Ct. at 465–66. This issue may arise in a motion to dismiss or for summary judgment, neither of which is currently before this court.

For the reasons stated above, this court will fulfill its "virtually unflagging obligation" to exercise jurisdiction in this case, and will not abstain. Furthermore, the court **GRANTS** the motion by defendants Health and Sanitation Department, Leroy Robinson, Ray Minegar, Fran Curry, and Richard Moore to file their second amended separate answer. **SO ORDERED.**