# Illinois Official Reports

## Appellate Court

---

### *Bank of New York Mellon v. Sperekas*, 2020 IL App (1st) 191168

---

| | |
|---|---|
| Appellate Court Caption | THE BANK OF NEW YORK MELLON, f/k/a the Bank of New York, as Trustee for the Certificate Holders of CWALT, Inc., Alternative Loan Trust 2005-47cb, Mortgage Pass-Through Certificates, Series 2005-47CB, Plaintiff-Appellant, v. GEORGE J. SPEREKAS II; THE BANK OF NEW YORK, as Trustee for the Benefit of the Certificate Holders of the CWHEQ Inc., Homer Equity Loan Asset-Backed Certificates, Series 2006-S1; RANDOLPH PLACE RESIDENCES CONDOMINIUM ASSOCIATION; CHICAGO PATROLMEN'S FEDERAL CREDIT UNION; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants-Appellees. |
| District & No. | First District, First Division<br>No. 1-19-1168 |
| Filed | March 9, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CH-10079; the Hon. Patricia S. Spratt, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Melissa E. Manning, Geneka L. Holyfield, and Rebekah A. Carpenter, of Akerman LLP, of Chicago, for appellant.<br><br>Stephen E. Brown and Douglas M. Matton, both of Chicago, for appellee George Sperekas. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pierce and Walker concurred in the judgment, and opinion.


## OPINION

¶ 1     The Bank of New York Mellon (Bank) filed a mortgage foreclosure complaint against defendant George J. Sperekas II. On its own motion, the trial court dismissed the complaint, without prejudice, finding the Bank failed to present sufficient evidence that it complied with section 15-1503(b) of the Mortgage Foreclosure Law (Foreclosure Law). 735 ILCS 5/15-1503(b) (West 2018). This section requires the Bank to send the notice of foreclosure to the alderman of the ward where the property is located. The court found that although the Bank mailed the notice to the alderman's proper street address, it failed to present evidence showing the proper room number or that the alderman received it. The trial court also denied the Bank's motion to reconsider, finding it failed to present newly discovered evidence showing compliance with the statute.

¶ 2     At the time of the dismissal, section 15-1503(b) of the Foreclosure Law provided that failure to send a copy of the notice to the alderman or to file an affidavit as required "results in the dismissal without prejudice of the complaint on motion of a party or the court." After the Bank filed its notice of appeal, the General Assembly amended section 15-1503(b). It now provides that failure to send a copy of the notice to the alderman or file an affidavit results "in a stay of the foreclosure action on a motion of a party or the court." Pub. Act 101-399 (eff. Aug. 16, 2019) (amending 735 ILCS 5/15-1503(b)). The stay will be lifted once the plaintiff presents the trial court with proof of delivery. *Id.*

¶ 3     The Bank argues the amendment to section 15-1503(b) should be applied retroactively and asks us to reverse the dismissal and enter a stay. Alternatively, the Bank argues the trial court erred in dismissing its complaint because (i) it complied with section 15-1503(b) by mailing the notice to the alderman at the correct street address and filing the affidavit of compliance and (ii) any error in the room number was immaterial, as the notice would have been forwarded to the alderman and Sperekas was not prejudiced absent evidence the alderman would have taken action on the notice. The Bank also argues the trial court erred in denying its motion to reconsider because it presented newly available evidence showing that based on custom and practice in 2016, a notice sent to the wrong room number would have been forwarded to the alderman.

¶ 4     We agree that the amendment to section 15-1503(b) is procedural and should be applied retroactively. We reverse the dismissal and remand to permit the trial court to apply the amended provision.


¶ 5                                    Background

¶ 6     Sperekas took out a loan for $309,200 secured by a mortgage on his condominium in Chicago. The Bank filed a complaint to foreclose the mortgage, along with an affidavit stating it complied with the requirements of section 15-1503(b) of the Foreclosure Law by mailing a copy of the notice of foreclosure to the ward alderman, Brendan Reilly, at his office in city hall. The notice was addressed to "City of Chicago, 121 North La Salle Street, Room 200, Chicago, Illinois."

¶ 7 Sperekas filed a motion to dismiss the Bank's complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)), arguing that despite the affidavit, the Bank failed to comply with the alderman notification requirement of section 15-1503(b) of the Foreclosure Law. Section 15-1503(b) of the Foreclosure Law requires the foreclosing party to, within 10 days after filing the complaint, "(i) send by first class mail, postage prepaid, a copy of the notice of foreclosure to the alderman for the ward in which the real estate is located and (ii) file an affidavit with the court attesting to the fact that the notice was sent to the alderman for the ward in which the real estate is located." *Id.* § 15-1503(b).

¶ 8 Sperekas asserted that although the Bank sent the notice to Reilly at the correct street address, it was sent to room 200, not room 300, which Sperekas contends was the location of the alderman's office since at least August 2016, when the complaint was filed. Attached to Sperekas's motion was a letter from the alderman stating he had no record of having received the notice of foreclosure. And, as Sperekas points out, Reilly's letterhead lists his office as room 300.

¶ 9 After a hearing, the trial court struck Sperekas's motion to dismiss as improper and, on its own motion, ordered the Bank to provide an affidavit or other proof showing that it complied with the alderman notification requirement.

¶ 10 The Bank submitted two documents to the trial court. One was an affidavit from the managing attorney of its law firm, stating he sent a letter to Brendan Reilly at "City Hall, 121 N. La Salle Street, Room 200, Chicago, IL 60602" via certified mail, and the letter was delivered to the alderman despite the incorrect room number. The Bank also submitted an affidavit from Ivan Hansen, deputy commissioner for facility operations with the City of Chicago. Hansen averred that "[i]t is the custom and practice of the mailroom that when mail is received for an alderman, and the mail is misaddressed to the wrong floor, that the mailroom redirects the mail internally to deliver it to the alderman without returning it to the United States Postal Service."

¶ 11 After argument, the trial court found the Bank's affidavits did not sufficiently show compliance with section 15-1503(b) and dismissed the foreclosure complaint without prejudice. The court found Hansen's affidavit insufficient because it only addressed current protocols but did not address protocols in place in 2016, when the Bank purportedly sent the notice to the alderman. The judge was not "convinced that [the notice] went to the right address" or met the requirements of section 15-1503(b).

¶ 12 The Bank filed a motion to reconsider, attaching a new affidavit from Hansen stating that, in August 2016, it was the custom and practice for the mailroom to forward misaddressed mail internally rather than return it to the post office. The trial court denied the motion to reconsider, stating that the affidavit was not newly discovered evidence because it contains information previously available to the Bank. The Bank appealed the dismissal order and the order denying its motion for reconsideration.

¶ 13 After the Bank filed its notice of appeal, the General Assembly amended section 15-1503(b) of the Foreclosure Law to state:

> "The failure to send a copy of the notice to the alderman or to file an affidavit as required shall result in a stay of the foreclosure action on a motion of a party or the court. If the foreclosure action has been stayed by an order of the court, the plaintiff or the plaintiff's representative shall send the notice by certified mail, return receipt requested, or by private carrier that provides proof of delivery, and tender the return

receipt or the proof of delivery to the court. After proof of delivery is tendered to the court, the court shall lift the stay of the foreclosure action." Pub. Act 101-399 (eff. Aug. 16, 2019) (amending 735 ILCS 5/15-1503(b)).

¶ 14                                      Analysis
¶ 15                          *Retroactive Application of Statute*

¶ 16     The Bank contends we should apply the amendment to section 15-1503(b) retroactively (it became effective during the appeal) and, rather than dismiss its complaint, impose a stay to allow the Bank to comply with the alderman notification requirement. Contrary to Sperekas's contention that retroactivity should be heard in the first instance by the trial court, since the amendment arose after the filing of the appeal, we may consider it. See *People v. Hunter*, 2017 IL 121306, ¶ 15; *Deicke Center–Marklund Children's Home v. Illinois Health Facilities Planning Board*, 389 Ill. App. 3d 300, 303 (2009). We review the issue of retroactive application of a statute under a *de novo* standard of review. *Deicke Center*, 389 Ill. App. 3d at 303.

¶ 17     In determining whether an amendment applies prospectively or retroactively, we follow the two-step approach established by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). First, if the legislature has expressly prescribed the amended statute's temporal reach, that expression of legislative intent must be given effect, absent a constitutional prohibition. *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 29. Second, if the amendment contains no express provision regarding its temporal reach, the court must determine whether the statute would have a retroactive impact, keeping in mind the general principle that prospective application is the appropriate default rule. *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 330-31 (2006). A court will consider whether retroactive application of the amended statute will impair rights a party possessed when acting, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If retrospective application of the amended statute has inequitable consequences, a court will presume the legislature did not intend that it be so applied. *J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 30.

¶ 18     Illinois courts, however, rarely look beyond the first step of the *Landgraf* analysis. Courts presume an amendatory act, without a clear indication of legislative intent on its temporal reach, was to have been framed in view of section 4 of our Statute on Statutes (5 ILCS 70/4 (West 2018)). *Caveney v. Bower*, 207 Ill. 2d 82, 94 (2003). Referred to as a general saving clause (*Novak*, 223 Ill. 2d at 331), this section has been construed as applying procedural changes to statutes retroactively and substantive changes to statutes prospectively. *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 20 (citing *People v. Glisson*, 202 Ill. 2d 499, 506-07 (2002)).

¶ 19     The Bank contends the amendment to section 15-1503(b) describes a mere procedural change and should be applied retroactively, with the proceedings stayed until it complies by sending notice to the alderman.

¶ 20     Sperekas acknowledges the procedural nature of the change but contends that because the trial court dismissed the complaint, ending the proceedings, the amendment only applies prospectively. For support, Sperekas relies on *Hunter*. In *Hunter*, our supreme court stated that " 'the mere fact that a new rule is procedural does not mean that it applies to every pending case.' " *Hunter*, 2017 IL 121306, ¶ 34 (quoting *Landgraf*, 511 U.S. at 275 n.29). So additional

analysis determines if the construction brings about "absurd, unreasonable, or unjust results that the legislature could not have intended." *Id.* ¶ 28.

¶ 21　　In *Hunter*, the defendant was 16 years old when he committed armed robbery with a firearm and aggravated vehicular hijacking. *Id.* ¶¶ 4, 6. During his direct appeal, a statute went into effect that removed his offenses from the list of those requiring automatic transfer from juvenile to adult court. *Id.* ¶¶ 7-8. On appeal, the defendant argued his case should be remanded for a discretionary transfer hearing. *Id.* ¶ 9. The supreme court disagreed, as "the proceedings in the trial court were completed well before the statute was amended," and "[n]o 'ongoing proceedings' existed to which the amended statute could apply." *Id.* ¶ 32. Retroactive treatment would result in the reviewing court "effectively creating new proceedings for the sole purpose of applying a procedural statute that postdates [the defendant's] trial and sentence." *Id.* ¶ 33. The court stated, "[r]emand under such circumstances would create inconvenience and a waste of judicial resources—a real-world result that the General Assembly could not have intended." *Id.* ¶ 36.

¶ 22　　The *Hunter* court conceded that "retroactivity jurisprudence has not typically distinguished between cases that are pending in the trial court and cases pending in the appellate court on direct review at the time a statutory amendment becomes effective." *Id.* ¶ 27. And that section 4 "contemplates the existence of proceedings after the new or amended statute is effective to which the new procedure could apply." *Id.* ¶ 31. No ongoing proceedings existed to which the amendment could apply. *Id.* ¶ 32. Accordingly, "[n]othing remains to be done." "Because Hunter's trial court proceedings have been concluded and no further trial court proceedings are necessitated by reversible error, applying the amended statute retroactively to Hunter's case would result in this court effectively creating new proceedings for the sole purpose of applying a procedural statute that postdates his trial and sentence." *Id.* ¶¶ 32-33. The court noted that appellate remand to the circuit court for retrial each time the General Assembly enacted a new procedural trial rule would "create inconvenience and a waste of judicial resources—a real-world result that the General Assembly could not have intended." *Id.* ¶ 36.

¶ 23　　Sperekas contends that because the trial court dismissed the Bank's complaint, nothing further needs to be done. We disagree. Unlike in *Hunter*, where the defendant had a trial and was sentenced, this foreclosure case was still at an early stage. Had the court dismissed the complaint with prejudice, precluding the Bank from refiling, the proceedings would be complete. But, as required by section 15-1503(b), the trial court dismissed the complaint without prejudice. Proceedings are contemplated after the dismissal; the Bank will refile the same complaint including the same facts and allegations, with the only difference being that notice will be provided to the alderman, who has no legal interest in the proceeding.

¶ 24　　As the supreme court stated in *Hunter*, in deciding whether to apply the amended statute retroactively, we must look to avoid "inconvenience and a waste of judicial resources." *Id.* Requiring the Bank to refile merely to provide notice to the alderman would obviously be inconvenient to the Bank and waste judicial resources. To avoid this unreasonable result, the trial court's dismissal of the complaint without prejudice does not preclude retroactive application of the amended statute, if it is procedural rather than substantive in nature.

¶ 25　　　　　　　　　　　　*Substantive or Procedural?*

¶ 26　　Generally, a procedural change in the law prescribes a method of enforcing rights or involves pleadings, evidence, and practice. *Ores v. Kennedy*, 218 Ill. App. 3d 866, 871 (1991).

Examples of amendments that have been characterized as procedural and applied retroactively include amendments to the long-arm statute and service of process changes. *Id.* In contrast, a substantive change in law establishes, creates, or defines rights. *Ogdon v. Gianakos*, 415 Ill. 591, 596 (1953). An example of an amendment that was characterized as substantive and applied prospectively involved a statutory amendment that allowed an income tax credit for subchapter S corporation shareholders that previously did not exist. *Caveney*, 207 Ill. 2d 82.

¶ 27 Section 15-1503(b) involves a plainly procedural matter, as it does not give, define, or affect any substantive rights. It merely requires notifying the alderman where the foreclosed property is located. This would be most akin to statutes addressing service of process but even less significant because the alderman has no substantive interest in the proceeding.

¶ 28 A finding of the statutory change as procedural in nature, however, does not end our inquiry. We need to look at its retroactive impact. An amended statute has a retroactive impact or effect where it (i) impairs rights that a party possessed when it acted, (ii) increases a party's liability for past conduct, or (iii) imposes new duties with respect to transactions already completed. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 34 (2001). A statute does not operate retrospectively because it upsets expectations based on prior law. Instead, we must consider whether the amendment attaches new legal consequences to events completed before the amendment. *Id.* at 39.

¶ 29 Nothing indicates retroactive application of the amended statute will impair any vested rights. It merely creates a stay without imposing new legal consequences or impairing Sperekas's rights.

¶ 30 We reverse the dismissal of the Bank's complaint and remand for further proceedings in compliance with the amended statute. Because we reverse on this basis, we need not address the parties' other arguments.

¶ 31 Reversed and remanded.